# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § <br> § <br> § <br> § |
| Plaintiff, | § |
| v. | §     CASE NO.  3:17-cv-00139-D |
| | § |
| ROBIN GLEN CHARLET, <br> STEVEN WILLIAM SPARKS, <br> GREGORY JOHN TUTHILL, and <br> KIRK DEAN PORTER, | § <br> § <br> § <br> § |
| | § |
| Defendants. | § |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO
## DEFENDANT CHARLET'S RULE 12(b)(6) MOTION TO DISMISS

Dated:  May 24, 2017.

Respectfully submitted,

*/s/ Janie L. Frank*
Janie L. Frank
Texas Bar No. 07363050
SECURITIES AND EXCHANGE COMMISSION
Fort Worth Regional Office
Burnett Plaza, Suite 1900
801 Cherry Street, Unit #18
Fort Worth, TX 76102-6882
(817) 978-6478
(817) 978-4927 (facsimile)
*frankj@sec.gov*

COUNSEL FOR PLAINTIFF UNITED STATES
SECURITIES AND EXCHANGE COMMISSION

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................iii-viii

I.    SUMMARY OF THE COMMISSION'S OPPOSITION ................................................1

II.   FACTUAL ALLEGATIONS CONCERNING CHARLET............................................2

III.  ARGUMENTS AND AUTHORITIES............................................................4

    A.    The Standard for Determining Rule 12(b)(6) Motions is Liberal, and the
          Complaint is Construed in the Plaintiff's Favor ....................................4

    B.    The Complaint Cannot Be Dismissed Under 28 U.S.C. § 2462 ..........................6

          1.    *28 U.S.C. § 2462 applies to remedies—not actions—and does
                not apply to the Commission's requests for injunctive relief or
                disgorgement* ..........................................................6

                a. § 2462 does not apply to injunctive relief ...........................8

                b. § 2462 does not apply to disgorgement .............................11

          2.    *The Complaint alleges facts describing Charlet's unlawful conduct
                within the five years preceding its filing* ................................12

          3.    *The Complaint details Charlet's continuing course of conduct* .............13

          4.    *The Complaint adequately alleges facts describing Charlet's
                receipt of ill-gotten gains he should disgorge*........................15

    C.    The Complaint Sufficiently Alleges That Charlet Acted as an Unregistered
          Broker in Violation of Exchange Act Section 15(a)..........................16

          1.    *Statutory definition of "broker" is augmented by case law* ..................17

          2.    *The Complaint sufficiently pleads facts showing Charlet
                acted as a broker*.....................................................20

          3.    *Charlet's focus on the clause "for the account of others"
                is misplaced*............................................................21

4.    *The Commission is not required to plead that Charlet acted as an agent* ...................................................................23

5.    *The Complaint alleges facts establishing that Charlet was not a mere "finder."* ...............................................................24

IV.    REQUEST FOR LEAVE TO AMEND COMPLAINT ................................................25

V.    CONCLUSION .........................................................................................................25

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Adena Exploration, Inc. v. Sylvan*,
   860 F.2d 1242 (5th Cir. 1988) .......................................................................21

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)........................................................................................5

*Bhatia v. Dischino*,
   2011 WL 3820825 (N.D. Tex. Aug. 29, 2011)..............................................17

*Bd. of Trade of City of Chicago v. SEC*,
   883 F.2d 525 (7th Cir. 1989) .......................................................................24

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)........................................................................................5

*Bramlett v. Medical Protective Co. of Fort Wayne, Ind.*,
   855 F. Supp. 2d 615 (N.D. Tex. 2012) ...........................................................5

*Foman v. Davis*,
   371 U.S. 178 (1962)......................................................................................25

*Gabelli v. SEC*,
   133 S. Ct. 1216 (2013)....................................................................................8

*Gryl ex rel. Shire Pharm. Grp. PLC v. Shire Pharm. Grp. PLC*,
   298 F.3d 136 (2d Cir. 2002)..........................................................................24

*Havens Realty Corp. v. Coleman*,
   455 U.S. 363 (1982)......................................................................................13

*In re Katrina Canal Breaches, Litig.*,
   495 F.3d 191 (5th Cir. 2009) .........................................................................5

*In the Matter of Eric T. Burns*,
   2014 WL 1246758 (Mar. 27, 2014) (Initial Dec.) ........................................18

*In the Matter of Larry C. Grossman*,
   2016 WL 5571616 (Sept. 30, 2016) (Comm'n Op.)........................................7

*In the Matter of Gordon Wesley Sodorff*,
   1992 WL 224082 (Sept. 2, 1992) (Comm'n Op.)..........................................18

*In the Matter of Frederick W. Wall*,
  2005 WL 2291407 (Sept. 19, 2005) (Comm'n Op.)..........................................................18

*Kokesh v. SEC*,
  137 S. Ct. 810 (Jan. 13, 2017).....................................................................................1, 12

*Landegger v. Cohen*,
  2013 WL 5444052 (D. Colo. Sept. 30, 2013)................................................................20

*Lormand v. U.S. Unwired, Inc.*,
  565 F.3d 228 (5th Cir. 2009) ...........................................................................................5

*Lovick v. Ritemoney Ltd.*,
  378 F.3d 433 (5th Cir. 2004) ...........................................................................................5

*Massachusetts Fin. Serv., Inc., v. Sec. Investor Protection Corp.*,
  411 F. Supp. 411 (D. Mass. 1976), *aff'd*, 545 F.2d 754 (1st Cir. 1976) ...........................19

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cheng*,
  901 F.2d 1124 (D.C. Cir. 1990)...............................................................................23, 24

*Priester v. Lowndes County*,
  354 F.3d 414 (5th Cir. 2004) ...........................................................................................5

*Riordan v. SEC*,
  627 F.3d 1230 (D.C. Cir. 2010) .......................................................................................7

*SEC v. Benger*,
  697 F. Supp. 2d 932 (N.D. Ill. 2010) .............................................................................18

*SEC v. Berry*,
  580 F. Supp. 2d 911 (N.D. Cal. 2008) .............................................................................7

*SEC v. Boteler*,
  2014 WL 11460401 (N.D. Tex. Mar. 11, 2014) ..........................................................7, 12

*SEC v. Caserta*,
  75 F. Supp. 2d 79 (S.D.N.Y. 1999)................................................................................14

*SEC v. Collyard*,
  154 F. Supp. 3d 781 (D. Minn. 2015) .............................................................................19

*SEC v. Couch*,
  2014 WL 7404127 (N.D. Tex. Dec. 31, 2014) ......................................................4, 17, 21

*SEC v. Earthly Mineral Solutions, Inc.*,
  2011 WL 1103349 (D. Nev. Mar. 23, 2011) ....................................................19

*SEC v. Gagnon*,
  2012 WL 994892 (E.D. Mich. Mar. 22, 2012) ....................................... 20, 24-25

*SEC v. George*,
  426 F.3d 786 (6th Cir. 2005) .........................................................................19

*SEC v. Geswein*,
  2 F. Supp. 3d 1074 (N.D. Ohio 2014)..........................................................8, 14

*SEC v. Graham*,
  823 F.3d 1357 (11th Cir. 2016) ...............................................................8, 10, 11

*SEC v. Hansen*,
  1984 WL 2413 (S.D.N.Y. Apr. 6, 1984).....................................................18, 19

*SEC v. Hayes*,
  1991 WL 236846 (N.D. Tex. 1991 .............................................................7, 12

*SEC v. Helms*,
  2015 WL 5010298 (W.D. Tex. Aug. 21, 2015).........................................19, 23

*SEC v. Huff*,
  758 F. Supp. 2d 1288 (S.D. Fla. 2010) .......................................................14, 15

*SEC v. Jackson*,
  908 F. Supp. 2d 834 (S.D. Tex. 2012) ......................................................13, 15

*SEC v. Johnson*,
  87 F.3d 484 (D.C. Cir. 1996) .........................................................................9

*SEC v. Jones*,
  2006 WL 1084276 (S.D.N.Y. April 25, 2006) ..............................................14

*SEC v. Kelly*,
  663 F. Supp. 2d 276 (S.D.N.Y. 2009)............................................................14

*SEC v. Kenton Capital, Ltd.*,
  69 F. Supp. 2d 1 (D.D.C. 1998)...............................................................18, 19

*SEC v. Kokesh*,
    834 F.3d 1158, 2016 WL 4437585 (10th Cir. 2016), *cert. granted*, 137 S. Ct. 810
    (Jan. 13, 2017)...................................................................................6, 10, 11

*SEC v. Koscot Interplanetary, Inc.*,
    497 F.2d 473 (5th Cir. 1974) .........................................................................4

*SEC v. Kovzan*,
    807 F. Supp. 2d 1024 (D. Kan. 2011) ..........................................................14

*SEC v. Kramer*,
    778 F. Supp. 2d 1320 (M.D. Fla. 2011)...................................................19, 22

*SEC v. Life Partners Holdings, Inc.*,
    854 F.3d 765 (5th Cir. 2017) .......................................................................11

*SEC v. M&A West, Inc.*,
    2005 WL 1514101 (N.D. Cal. June 20, 2015), *aff'd in part and rev'd in part on
    other grounds*, 538 F.3d 1043 (9th Cir. 2008)..............................................22

*SEC v. Mapp*, No.,
    2017 WL 823559 (E.D. Tex. Mar. 2, 2017) .................................................22

*SEC v. Meadows*,
    119 F.3d 1219 (5th Cir. 1997) .......................................................................9

*SEC v. Microtune*,
    783 F. Supp. 2d 867 (N.D. Tex. 2011*), aff'd sub nom. SEC v. Bartek*, 484 Fed.
    Appx. 949 (5th Cir. 2012) (per curiam)..............................7, 8, 9, 10, 12

*SEC v. Mieka Energy Corp.*,
    2017 WL 1739767 (E.D. Tex. May 4, 2017)............................................19, 23

*SEC v. Nacchio*,
    614 F. Supp. 2d 1164 (D. Colo. 2009)............................................................7

*SEC v. Nappy*,
    1993 WL 535401 (N.D. Ill. 1993) ...............................................................16

*SEC v. Offill*,
    2012 WL 246061 (N.D. Tex. Jan. 26, 2012) ...........................................17, 19

*SEC v. Ogle*,
    2000 WL 45260 (N.D. Ill. Jan. 11, 2000) ....................................................14

*SEC v. Packetport.com, Inc.*,
  2006 WL 2798804 (D. Conn. Sept. 27, 2006) ...................................................7

*SEC v. Payton*,
  2016 WL 3023151 (S.D.N.Y. May 16, 2016) ..................................................16

*SEC v. Pentagon Capital Management PLC*,
  612 F. Supp. 2d 241 (S.D.N.Y. 2009), *aff'd*, 725 F.3d 279, 288 (2d Cir. 2013) .....7, 10, 15

*SEC v. Quinlan*,
  2008 WL 4852904 (E.D. Mich. Nov. 7, 2008) ...............................................10

*SEC v. Rabinovich & Assocs., LP*,
  2008 WL 4937360 (S.D.N.Y. Nov. 18, 2008) .................................................17

*SEC v. Rind*,
  991 F.2d 1486 (9th Cir. 1993) .........................................................................8

*SEC v. Riordan*,
  637 F.3d 1230 (D.C. Cir. 2010) .......................................................................9

*SEC v. Saltsman*,
  2016 WL 4136829 (E.D.N.Y. Aug. 2, 2016) ...................................................7

*SEC v Schiffer*,
  1998 WL 226101 (S.D.N.Y. May 5, 1998) .....................................................15

*SEC v. Strebinger*,
  114 F. Supp. 3d 1321 (N.D. Ga. 2015) ...........................................................14

*SEC v. Tambone*,
  550 F.3d 106 (1st Cir. 2008) .......................................................................7, 10

*SEC v. True North Finance Corp.*,
  909 F. Supp. 2d 1073 (D. Minn. 2012) ...........................................................16

*SEC v. U.S. Pension Trust Corp.*,
  2010 WL 3894082 (S.D. Fla. Sept. 30, 2010) ................................................18

*SEC v. Wyly*,
  56 F. Supp. 3d 394 (S.D.N.Y. 2014) ................................................................7

*SEC v. Zandford*,
  535 U.S. 813 (2002) ..........................................................................................4

*Sw. Realty, Ltd. v. Daseke,*
    1990 WL 85921 (N.D. Tex. May 9, 1990) .........................................................................4

*Sun River Energy, Inc. v. McMillan,*
    2014 WL 4771852 (N.D. Tex. Sept. 25, 2014)..................................................................4

*Sun River Energy, Inc. v. Nelson,*
    2013 WL 1222391 (D. Colo. Mar. 25, 2013) .................................................................20

*Tcherepnin v. Knight,*
    389 U.S. 332 (1967)...........................................................................................................4

*Zacharias v. SEC,*
    569 F.3d 458 (D.C. Cir. 2009) ..........................................................................................7

## FEDERAL STATUTES

15 U.S.C. § 77t(d)(2)(A) ..........................................................................................................16

15 U.S.C. § 78c(a)(4) ..........................................................................................................2, 17

15 U.S.C. § 78o(a)(1) ...............................................................................................................17

15 U.S.C. § 78u(d)(3)(B)(1) .....................................................................................................16

28 U.S.C. § 1658(a) ...................................................................................................................1

28 U.S.C. 2462 .....................................................................................................1, 4, 6, 12, 16

Fed. R. Civ. P. 8 ........................................................................................................................4

Fed. R. Civ. P. 9(b) .................................................................................................................16

Fed. R. Civ. P. 12(b)(6)..............................................................................................................5

Fed. R. Civ. P. 15 ....................................................................................................................25

## SECONDARY SOURCES

ROBERT L.D. COLBY & LANNY A. SCHWARTZ, *What is a Broker-Dealer?,*
    1821 PLI/Corp 37, 46 (June 28, 2010) ...................................................................... 17-18

Plaintiff Securities and Exchange Commission ("Commission") asks the Court to deny

Defendant's Motion to Dismiss ("Motion") and respectfully shows the following:

## I.
## SUMMARY OF THE COMMISSION'S OPPOSITION

Defendant Robin Glen Charlet seeks dismissal of the Commission's Complaint arguing

(1) all causes of action and requested remedies are barred by the statute of limitations, and (2) the

facts are insufficiently specific and fail to plead a cause of action under Securities and Exchange

Act Section 15(a) based on Charlet's failure to register as a broker.

Specifically, Charlet argues that 28 U.S.C. § 2462, the five-year statute of limitations

applicable to civil penalties, also precludes other relief the Commission seeks.[1]  Importantly, 28

U.S.C. § 2462 bars remedies, not causes of action, and in fact applies only to requests for (1)

civil fines, (2) penalties, and (3) forfeitures—remedies that seek to punish.  For example,

compare 28 U.S.C. § 1658(a), which bars any *civil action* enacted after 1990 unless brought

within four years of accrual, with 28 U.S.C. § 2462, which bars actions for a fine, penalty, or

forfeiture unless brought within five years of accrual.  In addition to not applying to causes of

action, Section 2462 does not, explicitly by its terms, apply to equitable relief like injunctions

and disgorgement.  And while the question of whether disgorgement is sufficiently punitive to be

included within § 2462 is pending before the United States Supreme Court in *Kokesh v. SEC*,

137 S. Ct. 810 (Jan. 13, 2017), the majority of cases hold that § 2462 does not apply to

disgorgement.  Further, it is long and well-settled that § 2462 does not apply to requests for

injunctive relief.  In any event, the Commission pleaded facts describing Charlet's violations of

---

[1]   Charlet argues that "the Commission's claims for injunctive relief in connection with alleged conduct by Mr. Charlet that occurred prior to January 13, 2012 are time-barred by § 2462." (Motion, at 14).  Even crediting Charlet's argument, his motion must be denied inasmuch as the Complaint clearly alleges actionable conduct on and after January 13, 2012, and 28 U.S.C. § 2462 limits the time period for which certain remedies can be obtained, not for which causes of action can be asserted.

the securities laws within the five years preceding the filing of the Complaint, and all relief for those violations are available and not barred.

The Complaint also specifies numerous facts regularly accepted by courts across the country, and in this district, as demonstrating "broker" conduct, as defined in Section 3(a)(4) of the Securities and Exchange Act of 1934 ("Exchange Act").  15 U.S.C. § 78c(a)(4).  Charlet's interpretation of the factors that must be pleaded to state a Section 15(a) claim is restrictive, incomplete, and not supported by the majority of cases.

It is well-settled that motions to dismiss are disfavored, and that the Court must consider the Complaint in the light most favorable to the Commission.  Given this liberal standard and the ample detail alleged in the Complaint describing Charlet's conduct, how he violated the securities laws, and how he was compensated in connection with those violations, Charlet's motion must be denied.

## II.
## FACTUAL ALLEGATIONS CONCERNING CHARLET

Charlet's conduct and compensation as an unregistered broker who offered and sold unregistered securities from at least September 2010 through January 2012 is amply alleged in the Complaint and easily satisfies the liberal pleading standards of Federal Rules of Civil Procedure 8 and 12(b)(6).  Indeed, Charlet is individually described and his conduct carefully alleged throughout the pleading, including, for example, allegations that he:

- was one of XO Marketing's independent contractors hired to sell Couch Oil and Gas, Inc. ("COG") securities, in spite of his lack of background in the oil and gas industry; (Complaint [Doc. 1], at ¶¶ 10, 19);

- led investors to believe he was a COG employee by using COG's logo and address when communicating with investors and by using email domains such as couchoil.com and couchoilgas.com (*Id.*, at ¶¶ 7, 10, 21);

- was a principal sales agent for XO Marketing in the offer and sale of COG securities from at least September 2010 *through* January 2012 (*Id.*, at ¶ 1, 10);

- was not a registered representative or associated person of any broker, dealer, or investment adviser and held no securities licenses during the relevant period (*Id.*, at ¶¶ 5, 10);

- raised, together with the other Defendants, $10 million from more than 200 investors in at least 21 states (*Id.*, at ¶ 1);

- himself offered and sold, or participated in the offer and sale, of COG securities to 59 investors in the COG 59 Well Program and 57 investors in the COG R9 Program, including to unaccredited investors without providing them relevant financial information (*Id.*, at ¶¶ 1, 22)

- in offering and selling COG securities, was:

  o responsible for handling key steps in the purchase and sale transactions;

  o promoted the offerings online;

  o located investors and gathered information from them;

  o spoke with investors over the phone to gauge their interest in the investment and provided them information about COG securities offerings, including an overview of COG's operations, drilling techniques, drilling plans, supposed results of prior investment programs, and expected investment returns and tax advantages;

  o distributed offering materials to investors, including press releases and a business synopsis or executive summary, the latter of which Charlet personally "beautified;"

  o made recommendations to investors to invest in COG;

  o persuaded investors to invest;

  o directed investors to submit checks or make wire transfers directly to COG; and

  o remained in contact with investors after they invested, in order to provide updates and information about new investment opportunities (*Id.*, at ¶¶ 4, 18, 19, 20, 21, 22);

- was compensated based on a percentage of the individual sales and investor proceeds he brought in (*Id.*, at ¶¶ 4, 23);

- may have received an additional commission payment on commissions paid to other Defendants, Greg Tuthill and Steve Sparks (*Id.*, at ¶ 23);

- received $835,912.67 in transaction-based compensation from January 1, 2011 *through* February 28, 2012 (*Id.*, at ¶ 23);

- has been ordered to cease and desist from offering and selling unregistered securities or acting as an unregistered agent in the offer or sale of securities (*Id.*, at ¶ 10); and

- as a result of this conduct, violated and, if not enjoined, will continue to violate Securities Act Section 5 and Exchange Act Section 15(a) (*Id.*, at ¶¶ 27, 31).

## III.
## ARGUMENTS AND AUTHORITIES

### A.    The Standard for Determining Rule 12(b)(6) Motions is Liberal, and the Complaint is Construed in the Plaintiff's Favor.

Charlet's motion to dismiss advances both a constricted interpretation of the Exchange Act and an overly broad view of 28 U.S.C. § 2462, neither of which accords with settled law.[2] Moreover, Charlet asks the Court to ignore the plain language of the Complaint and apply stricter standards to the Commission's pleading than are required under Federal Rules of Civil Procedure 8 or 12(b)(6).

Rule 8 requires a complaint to provide "a short and plain" statement of claims that are plausible and described with enough particularity to provide defendants with actual notice of the allegations lodged against them. FED. R. CIV. P. 8. The pleading standard for complaints is liberal, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual

---

[2]   The Exchange Act is remedial in nature and should be broadly construed to effectuate its purposes. *SEC v. Zandford*, 535 U.S. 813, 819 (2002) (Exchange Act "should be construed not technically and restrictively, but flexibly to effectuate its remedial purposes"); *Tcherepnin v. Knight*, 389 U.S. 332, 336 (1967); *SEC v. Koscot Interplanetary, Inc.*, 497 F.2d 473, 480 (5th Cir. 1974); *SEC v. Couch*, 2014 WL 7404127, at *7 (N.D. Tex. Dec. 31, 2014) (Fitzwater, J.) (quoting *Zandford*); *see generally Sun River Energy, Inc. v. McMillan*, 2014 WL 4771852 , at *12 (N.D. Tex. Sept. 25, 2014) (Fitzwater, J.) (court must interpret Section 16(b) of the Exchange Act "so that the remedial purposes of the section and rule will be effectuated," quoting *Sw. Realty, Ltd. v. Daseke*, 1990 WL 85921, at *6 (N.D. Tex. May 9, 1990) (Fitzwater, J.)).

proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (internal citation omitted).

Motions to dismiss under Rule 12(b)(6) seek to dismiss a complaint for failing to state a valid legal claim on which relief can be granted or for failing to allege sufficient facts on which a legal claim could be based. Fed. R. Civ. P. 12(b)(6). Such motions are viewed with disfavor and rarely granted. *Lormand v. U.S. Unwired, Inc.,* 565 F.3d 228, 232 (5th Cir. 2009); *Priester v. Lowndes County*, 354 F.3d 414, 418 (5th Cir. 2004). In deciding a Rule 12(b)(6) motion, the court evaluates the sufficiency of the complaint "by accept[ing] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F. Supp. 2d 615, 618 (N.D. Tex. 2012) (Fitzwater, J.) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted)); *see also Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004) (the court must accept as true all well-pleaded factual allegations of the complaint).

A motion to dismiss must be denied so long as the complaint pleads "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 500 U.S. at 556); *see also Twombly*, 550 U.S. at 555 ("factual allegations must be enough to raise a right to relief above the speculative level").

**B.** **The Complaint Cannot Be Dismissed Under 28 U.S.C. § 2462.**

Charlet contends that the Complaint should be dismissed because: (1) the five-year limitations period in 28 U.S.C. § 2462 applicable to civil penalties also applies to the Commission's equitable remedies of disgorgement and injunctive relief; (2) the Complaint fails to allege a single act Charlet committed within the five years preceding its filing; and (3) the Complaint fails to allege a basis on which to toll the limitations period.  None of these arguments is correct and the motion should therefore be denied.

1.     *28 U.S.C. § 2462 applies to remedies—not actions—and does not apply to the Commission's requests for injunctive relief or disgorgement.*

The entirety of Charlet's argument that the Complaint should be dismissed on limitations grounds hinges on a strained and legally unsupported claim that 28 U.S.C. § 2462 acts as a complete bar to each of the Commission's claims.  Importantly, 28 U.S.C. § 2462 bars certain *remedies*, not *causes of action* and, in fact, applies only to claims for (1) civil fines, (2) penalties, and (3) forfeitures.

The parties agree that § 2462 applies to Commission requests for civil penalties.  But it does not bar the Commission's causes of action under Securities Act Section 5 or Exchange Act Section 15(a); nor does it apply to its equitable requests for injunctions and disgorgement of ill-gotten gains. Section 2462 applies only where the Commission seeks punitive relief.  28 U.S.C. § 2462.  Hence, where the relief sought is equitable or remedial, § 2462 does not apply. Accordingly, most courts, and the Commission, have held that § 2462 does not limit the time for the Commission to file claims seeking permanent injunctions, disgorgement, or other equitable relief.  *See, e.g., SEC v. Kokesh*, 834 F.3d 1158, 1160, 2016 WL 4437585 (10th Cir. 2016) ("We

hold that both the permanent injunction and the disgorgement order are remedial and not subject to § 2462"), *cert. granted*, 137 S. Ct. 810 (Jan. 13, 2017).

While the question of whether § 2462 applies to the Commission's equitable claims for disgorgement (but not injunctions) is pending before the United States Supreme Court in *Kokesh*, the overwhelming majority of cases hold that Section 2462 does not apply to Commission requests for injunctive relief or disgorgement. *See, e.g., Riordan v. SEC*, 627 F.3d 1230, 1234-35 (D.C. Cir. 2010) (disgorgement is not a forfeiture); *Zacharias v. SEC*, 569 F.3d 458, 471-72 (D.C. Cir. 2009) (disgorgement is not punitive); *SEC v. Tambone*, 550 F.3d 106, 148 (1st Cir. 2008) (Section 2462 does not apply to disgorgement or injunctive relief); *SEC v. Saltsman*, 2016 WL 4136829, at *25-29 (E.D.N.Y. Aug. 2, 2016) (rejecting application of Section 2462 and citing five other district courts in the Second Circuit sharing that view); *SEC v. Wyly*, 56 F. Supp. 3d 394, 402-03 (S.D.N.Y. 2014); *SEC v. Boteler*, 2014 WL 11460401, at *1 (N.D. Tex. Mar. 11, 2014) (Means, J.) (holding Section 2462 does not apply to disgorgement and citing *SEC v. Microtune, Inc.*, 783 F. Supp. 2d 867, 888 (N.D. Tex. 2011) (Boyle, J.)); *SEC v. Nacchio*, 614 F. Supp. 2d 1164, 1175 (D. Colo. 2009); *SEC v. Pentagon Capital Management PLC*, 612 F. Supp. 2d 241, 267 (S.D.N.Y. 2009) (disgorgement and injunctive relief are both equitable remedies and not subject to limitations), *aff'd*, 725 F.3d 279, 288 (2d Cir. 2013); *SEC v. Berry*, 580 F. Supp. 2d 911 (N.D. Cal. 2008); *SEC v. Packetport.com, Inc.*, 2006 WL 2798804, at *3 (D. Conn. Sept. 27, 2006) (granting motion to strike statute of limitations affirmative defense because SEC sought only "equitable relief in the form of, *inter alia*, disgorgement, officer and director bars, and injunctions"); *SEC v. Hayes*, 1991 WL 236846, at *1) (N.D. Tex. 1991) (Maloney, J.); *In the Matter of Larry C. Grossman*, Rel. No. 4543, 2016 WL 5571616, at *1 (Sept. 30, 2016) (Comm'n Op.) ("We find that an industry bar, cease-and-desist order, and disgorgement are

equitable remedies not subject to Section 2462"); s*ee also SEC v. Rind*, 991 F.2d 1486, 1492 (9th Cir. 1993) (no fixed period of limitations governs Commission actions); *but see SEC v. Graham*, 823 F.3d 1357, 1363-64 (11th Cir. 2016) (holding Section 2462 applies to disgorgement because it is essentially a "forfeiture").

Perhaps recognizing that his argument is not supported by a preponderance of the law, Charlet next argues that *Kokesh* "does not comport" with *Gabelli v. SEC*, 133 S. Ct. 1216 (2013), which held *only* that the discovery rule does not toll limitations in fraud claims brought by the Commission. *Id.*, at 1219.  The *Gabelli* Court expressly stated that the question of whether § 2462 applied to injunctive relief and disgorgement was *not* before it.  *Id.*, at n.1.  Moreover, the *Gabelli* Court did not address the concepts of fraudulent concealment or the continuing violation doctrine.  *See SEC v. Geswein*, 2 F. Supp. 3d 1074, 1084 (N.D. Ohio 2014) (finding that the Supreme Court in *Gabelli* did not reject the continuing violations doctrine or the fraudulent concealment theory expressly or by implication and noting that the Supreme Court did not discuss those doctrines at all).  Thus, Charlet's efforts to persuade the Court to extend *Gabelli* beyond its holding and apply the minority view reached by the *Graham* decision should be rejected, and this Court should follow the majority view that § 2462 does not apply to the Commission's requests for injunctive relief or disgorgement.

> a.      § 2462 does not apply to injunctive relief.

Charlet relies on *SEC v. Microtune* to argue that the Commission's request for injunctive relief is punitive as a matter of law and hence time-barred under § 2462.  (Motion, at 14); *SEC v. Microtune*, 783 F. Supp. 2d 867 (N.D. Tex. 2011) (Boyle, J.*), aff'd sub nom. SEC v. Bartek*, 484 Fed. Appx. 949 (5th Cir. 2012) (per curiam) (hereinafter the "*Microtune* decision").  But Charlet's argument characterizes *Microtune* and the Fifth Circuit's unpublished affirmance of it

as applying an unambiguous rule—that any injunctive relief sought by the Commission is a

penalty and subject to § 2462.  That is not the holding of the *Microtune* decision, which is, in

fact, distinguishable for a number of reasons:

- *Microtune* applied and expanded an objective test derived from *SEC v. Johnson*, 87 F.3d 484, 488 (D.C. Cir. 1996), that an industry suspension (not an injunction) could be considered punitive under certain circumstances.  But *Johnson* did not hold, and the D.C. Circuit later rejected any idea, that an administrative censure (and presumably court-ordered injunctive relief) was barred by Section 2462. *SEC v. Riordan*, 637 F.3d 1230, 1234 (D.C. Cir. 2010); *Johnson*, 87 F.3d at 488. Thus, when the *Microtune* district court relied on *Johnson* to find that an injunction was punitive, it extended *Johnson* beyond where even the D.C. Circuit had gone.

- The majority of the courts, in fact, hold that equitable remedies, including injunctive relief, are not subject to statutes of limitations. (*See supra*, at 7-8).

- The procedural posture of *Microtune* was very different from this case—it was decided on summary judgment motions after the development of the record, not on motions to dismiss. *Microtune*, 783 F. Supp. 2d at 870.

In addition, while the Fifth Circuit affirmed the district court (in *Bartek*), it did so in an

unpublished, non-binding decision. Indeed, the Fifth Circuit had previously distinguished the

*Johnson* case.  *SEC v. Meadows*, 119 F.3d 1219, 1228 n. 20 (5th Cir. 1997).  In *Meadows*, the

Fifth Circuit characterized *Johnson* as holding that the imposition of a six-month suspension "is

less penal in nature where the reason for the sanctions is the degree of risk petition poses to the

public and is based upon findings demonstrating the petitioner's unfitness to serve the investing

public." *Id.*

In applying the D.C. Circuit's test from *Johnson* to determine if the requested  injunctive

relief and officer and director bar constituted a penalty, the *Microtune* court held that the

requested remedies were properly construed to be penalties because, among other reasons, they

were not focused on preventing future harm and the likelihood that the defendants would engage in similar behavior in the future was low. *Microtune*, 783 F. Supp. 2d at 885.

The court further found another case, *SEC v. Quinlan*, 2008 WL 4852904 (E.D. Mich. Nov. 7, 2008), "instructive." *Microtune*, 783 F. Supp. 2d at 885 n. 30.   In *Quinlan*, the injunctive relief and officer and director bar was held appropriate because the defendant:  knowingly and deliberately engaged in fraudulent business and accounting practices for years; repeatedly made false financial statements and misrepresented material facts; lied to auditors; showed no remorse for the tremendous losses suffered by the investors; pleaded guilty and admitted fraud in his plea agreement; was convicted in state and federal court for securities violations on the same conduct underlying the civil suit; and was held to be reasonably likely to engage in future violations. *Microtune*, 783 F. Supp. 2d at 885 n. 30 (describing *Quinlan* defendant's conduct).   In contrast, the *Microtune* court held that the injunctive relief and officer and director bars were punitive, and barred under Section 2462, because the defendants disputed their *scienter* (with the court seeming to agree, stating "it is not clear that the business community was even aware that backdating [options] was unlawful at the time"); that no related criminal cases in connection with the options backdating had been brought; that whether Microtune investors suffered significant losses was disputed; and that the likelihood that the defendants would engage in those practices again was low. *Id.*  Hence, if *Microtune* has any precedential value, it is that the factual record developed on summary judgment did not show that the defendants' level of unfitness rose to such a level as to indicate future risk to the investing public.

The clear weight of authority does not apply Section 2462 to injunctive relief. *E.g.,* *Kokesh*, 834 F.3d at 1160; *Graham*, 823 F.3d at 1364; *Tambone*, 550 F.3d at 148 (Section 2462 does not apply to injunctive relief); *Pentagon Capital Management PLC*, 612 F. Supp. 2d at 267

(injunctive relief is an equitable remedy not subject to limitations).  Charlet's reliance on the *Microtune* decision is therefore unwarranted.

But even were this Court to follow the *Microtune* decision's reasoning, the Complaint contains allegations (which Charlet ignores) that Charlet does pose a future risk of violating the securities laws, thereby making the injunctive relief remedial and not punitive: (1) after concluding his work for COG, he continued to offer and sell securities without being registered to do so; (2) he was ordered to cease-and-desist from offering and selling unregistered securities and omitting material facts in connection with offering and selling securities in 2015; (3) he is currently defending allegations of involvement in a securities fraud in Oklahoma; and (4) he obviously does not accept or acknowledge his wrongdoing in this action.  (*See* Complaint, at ¶ 10).  This is the sort of conduct demonstrating a reasonable likelihood of future violations and, consequently, the need for a permanent injunction. *See generally SEC v. Life Partners Holdings, Inc.*, 854 F.3d 765, 784 (5th Cir. 2017) (permanent injunction is appropriate when defendant's past conduct gives rise to inference that, in light of present circumstances, a reasonable likelihood of future transgressions is present because, among other factors, appellants lacked remorse, their conduct was recurrent, and they had opportunities for future violations).

At a minimum, it would be premature to dismiss the Commission's claim for relief until the factual record can be further developed.

> b.    § 2462 does not apply to disgorgement.

As to disgorgement, the Eleventh Circuit held last year that § 2462 applies to disgorgement in *SEC v. Graham,* 823 F.3d 1357, 1363-64 (11th Cir. 2016).  Three months later, the Tenth Circuit expressly rejected *Graham's* reasoning in *SEC v. Kokesh*, 834 F.3d 1158, 1162, 1167 (10th Cir. 2016).  The Tenth Circuit held that, in keeping with long-standing statutory

construction principles that (1) limitations statutes are to be interpreted narrowly and in the government's favor and (2) equitable claims are usually not subject to limitations, § 2462 did not apply to the Commission's requests for disgorgement or injunctive relief.  The Supreme Court granted certiorari in *Kokesh*, and a decision on the parties' briefs is forthcoming.  *Kokesh v. SEC*, 137 S. Ct. 810 (2017).  As noted above, other circuits align with *Kokesh* and hold that disgorgement is not covered under § 2462.

And while the parties agree that the Fifth Circuit has not weighed in on the issue (*see* Motion, at 10), courts in this district have held that § 2462 does <u>not</u> apply to disgorgement. *Boteler,* 2014 WL 11460401, at *1; *Microtune, Inc.*, 783 F. Supp. 2d at 888; *Hayes*, 1991 WL 236846, at *1.

> 2. *The Complaint alleges facts describing Charlet's unlawful conduct within the five years preceding its filing.*

Even assuming *arguendo* that 28 U.S.C. § 2462 applies to the Commission's causes of action and its requests for equitable relief in the form of injunctions and disgorgement, the Commission filed this matter January 13, 2017, and the Complaint plainly alleges that Charlet violated the securities laws and received compensation for such conduct *after* January 13, 2012—the start of the five-year period preceding the Complaint. For example, the Complaint states that (1) Charlet sold COG investments "through" January 2012, and at least "until" January 28, 2012; (2) Charlet was paid sales commissions through February 28, 2012; (3) he was neither a registered representative of, nor associated with, any broker, dealer, or investment adviser during that time; and (4) the COG securities he offered and sold were not registered

during that time. (*See* Complaint at ¶¶ 1, 10, 14, 23-24.)[3]  Taking these allegations as stated, and certainly when reading them in the light most favorable to the Commission, it is beyond dispute that the Complaint states actionable claims under Securities Act Section 5 and Exchange Act Section 15(a), and that the conduct underlying those claims occurred within the five years preceding the filing of the Complaint.  Moreover, since a claim accrues only when all elements have been satisfied, the Commission's disgorgement claims accrued when Charlet received the money because that was when he was unjustly enriched.

       3.     *The Complaint details Charlet's continuing course of conduct.*

In addition, Charlet's violations within the five years preceding the filing of the Complaint were part of a continuing course of conduct.  Under the continuing violation doctrine, when a the course of conduct violating the law begins outside the limitations period but continues into the limitations period, a complaint is timely if it is filed within the limitations period as measured from the date the unlawful conduct stopped.  *SEC v. Jackson*, 908 F. Supp. 2d 834, 871 (S.D. Tex. 2012).  Statutes of limitations preclude stale claims, but when a challenged violation is continuing, the "staleness concern … disappears." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380-81 (1982).

Here, the facts alleged in the Complaint clearly describe how Charlet was engaged in a continuing violation. (Complaint, at ¶ 10 ["At all times relevant to this action, Charlet was neither a registered representative nor associated with any broker, dealer, or investment adviser …"]; ¶ 22 [Charlet sold or participated in the sale of approximately 59 investors in the 59 Well Program and 57 investors in the R9 Program]; ¶ 23 ["From January 1, 2011 through February 28,

---

[3]  *See also* ¶ 10, describing the cease and desist order entered December 24, 2015, which Charlet consented to in connection with the offer and sale of COG securities.  In that Consent Order, Charlet consented to findings that he "offered and/or sold securities for which no registration is on file with the Washington state Securities Administrator. http://www.dfi.wa.gov/documents/securiteis-orders/S-14-1417-15-CO03, at *7 (Dec. 24, 2015).

2012, Defendants received the following amounts as transaction-based compensation," with

chart showing Charlet received $835,912.67]; ¶ 24 ["Defendants finally stopped selling the R9

Program on or about January 28, 2012," a date within the limitations period]).  Based on these

facts, among others, the allegations clearly indicate Charlet was never registered, sold securities

throughout the time period and within the five years pre-filing, and received compensation for

such sales within that time, such that a continuing violation is readily apparent from the facts and

the Complaint was timely.

A number of courts have applied the continuing violations doctrine in Commission cases.

*See, e.g., SEC v. Strebinger*, 114 F. Supp. 3d 1321, 1327-28 (N.D. Ga. 2015); *Geswein*, 2 F.

Supp. 3d at 1084 (rejecting interpretation of *Gabelli* as holding that continuing violations

doctrine precludes SEC's claims, denying defendants' supplemental motions to dismiss, and

adhering to earlier ruling that doctrine applies); *SEC v. Kovzan*, 807 F. Supp. 2d 1024, 1035-36

(D. Kan. 2011); *SEC v. Huff*, 758 F. Supp. 2d 1288, 1340-41 (S.D. Fla. 2010); *SEC v. Kelly*, 663

F. Supp. 2d 276, 287-88 (S.D.N.Y. 2009); *SEC v. Ogle*, 2000 WL 45260, at *4 (N.D. Ill. Jan. 11,

2000) (holding that the Seventh Circuit's reasoning accepting the continuing violations doctrine

in civil rights actions, employment discrimination suits, and copyright actions applies to

securities law violations as well); *but see SEC v. Jones*, 2006 WL 1084276, at *4-5 (S.D.N.Y.

April 25, 2006); *SEC v. Caserta*, 75 F. Supp. 2d 79, 89 (S.D.N.Y. 1999) (holding that it is not

certain that continuing violations doctrine applies in securities fraud litigation, but not ruling it

out).

In *SEC v. Huff*, the court explained that:

. . . not applying the [continuing violation] doctrine in the SEC enforcement
context could frustrate congressional purpose in enacting the Securities Act and
the Exchange Act in that the nature of certain types of securities violations is such

that they necessarily take time to detect. While time passes, however, such violations can inflict significant harm on the investing public. If wrongdoers may continue to reap the benefit of their continuing violations with no threat of punitive enforcement actions, then, for some, the possibility that they may eventually merely have to return what may be left of their ill-gotten gains may become simply a cost of doing business. Such an outcome conflicts with congressional intent to prevent securities fraud. Consequently, this Court finds that the "continuing violations" doctrine may apply where the appropriate facts exist.

*Huff*, 758 F. Supp. 2d at 1340-41.

Courts have also held that, regardless of whether the continuing violations doctrine applies, it is nevertheless inappropriate to dismiss a complaint where the continuing violations doctrine may toll limitations until a more complete factual record is before the court. *Jackson*, 908 F. Supp. 2d at 873 (foregoing deciding whether to extend the continuing violations doctrine to securities cases until a complete factual record was before the court); *SEC v. Pentagon Capital Management PLC*, 612 F. Supp. 2d 241, 267 (S.D.N.Y. 2009) (premature to rule on the statute of limitations defense at the motion to dismiss stage due to the applicability of the continuing violation doctrine); *SEC v Schiffer*, 1998 WL 226101, at * 3 (S.D.N.Y. May 5, 1998) (declining to hold the doctrine applied, but also declining to dismiss SEC's complaint so that the facts could be further developed).

    4.  *The Complaint adequately alleges facts describing Charlet's receipt of ill-gotten gains he should disgorge.*

Finally, Charlet contends that the Commission failed to plead "a claim for disgorgement." (Motion, at 12). But disgorgement is a remedy, not a claim or cause of action. Nevertheless, the Complaint sufficiently states that Charlet was not registered as a broker when he offered and sold unregistered securities, that such conduct broke the law, and that he received $835,912.67 in transaction-based compensation for those violations—funds he never should have received. (*See*

Complaint, at ¶¶ 10, 18-20, 21-24).  The plain import and obvious inference to be drawn from those allegations is that all of Charlet's compensation was ill-gotten, and should be disgorged, as the Commission specifically requests in § VI of the Complaint.

Ultimately, the entirety of Charlet's limitations argument rests on a faulty premise regarding the application and reach of 28 U.S.C. § 2462.  His motion should be denied and the determination of what remedies should be ordered against Charlet should be made by the Court at a later date, after a determination of his liability. 15 U.S.C. § 77t(d)(2)(A)(amount of penalty is determined by court); 15 U.S.C. § 78u(d)(3)(B)(1)(same); *SEC v. Payton*, 2016 WL 3023151, at *3 (S.D.N.Y. May 16, 2016) (in any SEC enforcement action, determination of remedies is for the court while the jury determines liability); *SEC v. True North Finance Corp.*, 909 F. Supp. 2d 1073, 1124 (D. Minn. 2012) (parties agree that court rather than jury decides remedies); *SEC v. Nappy*, 1993 WL 535401, at *6 n. 1 (N.D. Ill. 1993) (disgorgement and injunctive relief are equitable remedies that the court, not the jury, decides).

**C.     The Complaint Sufficiently Alleges That Charlet Acted as an Unregistered Broker in Violation of Exchange Act Section 15(a).**

Charlet does not dispute that he was never registered as a broker during the relevant period, but contends that the Commission failed to plead sufficient facts showing he *acted* as a broker.  Charlet premises his argument, in part, on the unavailing claim that the Complaint "lumps" Defendants together as a group, though he notably stops short of claiming any inability to discern the conduct he is alleged to have engaged in or how it violated the law. (Motion, at 3). But while arguments that a complaint groups or "lumps" Defendants together *might* raise specificity concerns under FED. R. CIV. P. 9(b) when fraud is alleged, no such allegation is present in this case, and 9(b) pleading requirements do not apply.

In any event, reviewing the Complaint in this case in the light most favorable to the Commission, it is reasonable for the Court to infer that each reference in the Complaint to "Defendants" collectively encompasses each Defendant individually.   Indeed, in several instances the Commission did use the word "each" before the word "Defendant," thereby making that point explicitly.  (Complaint, at ¶¶ 17-19, 21).   Nonetheless, it is acceptable for the Commission to allege the conduct of each Defendant collectively.  *See, e.g., Couch*, 2014 WL 7404127, at *5 (citing *Bhatia v. Dischino*, 2011 WL 3820825, at *12 (N.D. Tex. Aug. 29, 2011) (Boyle, J.) ("[m]ultiple defendants' conduct may be 'lumped together' if the plaintiff's allegations elsewhere designate the nature of the defendants' relationship to a particular scheme and identify the defendants' role")).

   1.  *Statutory definition of "broker" is augmented by case law.*

Section 3(a)(4)(A) of the Exchange Act defines a broker as "any person engaged in the business of effecting transactions in securities for the accounts of others." 15 U.S.C. § 78c(a)(4). A party violates Exchange Act Section 15(a) if he effects transactions in, or induces, or attempts to induce the purchase or sale of, any security without being registered as a broker or dealer. 15 U.S.C. § 78o(a)(1).[4]

While the Exchange Act does not define the terms, multiple courts have described the conduct that constitutes "being engaged in the business" of "effecting transactions in" securities. *SEC v. Offill*, 2012 WL 246061, at *7 (N.D. Tex. Jan. 26, 2012) (Fitzwater, J.).  In fact, "courts and the SEC have taken an expansive view of the scope" of the terms "broker," "engaged in the business," and "effecting transactions."  ROBERT L.D. COLBY & LANNY A. SCHWARTZ, *What is a*

---

[4]   It is not necessary to prove *scienter* to establish a violation of Section 15(a).  *SEC v. Offill*, 2012 WL 246061, at *6 (N.D. Tex. Jan. 26, 2012) (Fitzwater, J.) (citing *SEC v. Rabinovich & Assocs., LP*, 2008 WL 4937360, at *5 (S.D.N.Y. Nov. 18, 2008)).

*Broker-Dealer?* 1821 PLI/Corp 37, 46 (June 28, 2010).  The Commission has stated that the definition of a broker "should be construed broadly and that exemptions from registration requirements that flow from [Section 3(a)(4)] should be 'narrowly drawn in order to promote both investor protection and the integrity of the brokerage community.'" *In the Matter of Frederick W. Wall*, 2005 WL 2291407, at *3 n. 9 (Sept. 19, 2005) (Comm'n Op.) (citations omitted); *see also In the Matter of Eric T. Burns*, 2014 WL 1246758, at *3 n. 8 (Mar. 27, 2014) (Initial Dec.) (definition of "person associated with a broker or dealer" should be construed broadly).

Factors indicating that a person is "engaged in the business" include, among others, that he: (1) is an employee of the issuer; (2) received commissions as opposed to a salary; (3) is selling, or previously sold, securities of other issuers; (4) is involved in negotiations between the issuer and the investor; (5) makes valuations as to the merits of the investment or gives advice; and (6) is an active rather than passive finder of investors.  *SEC v. Hansen*, 1984 WL 2413, at *10 (S.D.N.Y. Apr. 6, 1984).  These so-called "*Hansen* factors" are not exclusive.  *See, e.g., SEC v. Benger*, 697 F. Supp. 2d 932, 945 (N.D. Ill. 2010); *see also SEC v. U.S. Pension Trust Corp.*, 2010 WL 3894082, at *21 (S.D. Fla. Sept. 30, 2010) (compiling a list of 11 factors courts consider when determining whether someone is a broker).

In addition, being "engaged in the business" does not require "that such activity be a person's principal business or the principal source of income." *In the Matter of Gordon Wesley Sodorff*, 1992 WL 224082, at *4 (Sept. 2, 1992) (Comm'n Op.). Some courts have held that being "engaged in the business" is indicated by a "regularity of participation." *SEC v. Kenton Capital, Ltd.*, 69 F. Supp. 2d 1, 12 (D.D.C. 1998) (internal quotation marks and citations omitted).  The regularity of a defendant's participation can be shown by such factors as the dollar amount of securities sold

and the extent to which advertisements and investor solicitations were used. *Id.*, at 12-13.  Other courts have characterized the regularity of participation as occurring "at key points in the chain of distribution." *Massachusetts Financial Services, Inc., v. Securities Investor Protection Corp.*, 411 F. Supp. 411, 415 (D. Mass. 1976), *aff'd*, 545 F.2d 754 (1st Cir. 1976).  "Yet neither definition [of "broker" or "dealer"] is all-encompassing. Each excludes, either explicitly or by implication, a variety of factors." *Id.; see also Hansen*, 1984 WL 2413, at *10.

In determining whether a person is "effecting transactions, " courts again consider several factors, a number of which overlap with factors used to consider whether one is "engaged in the business," such as whether the person (1) identified and solicited investors to buy securities; (2) was involved in negotiations between the issuer and the investor; or (3) received transaction-based compensation. *E.g., Offill*, 2012 WL 246061, at *7 (citing *SEC v. Earthly Mineral Solutions, Inc.*, 2011 WL 1103349, at *3 (D. Nev. Mar. 23, 2011); *SEC v. Helms*, 2015 WL 5010298, at *16-17 (W.D. Tex. Aug. 21, 2015).   Soliciting investors and receipt of commissions or transaction-related compensation indicate broker status.  *SEC v. George*, 426 F.3d 786, 797 (6th Cir. 2005).

Importantly, courts perceive a person's receipt of transaction-based compensation to be strong indicia that he acted as a broker.  *SEC v. Mieka Energy Corp.*, 2017 WL 1739767, at *4 (E.D. Tex. May 4, 2017) (Mazzant, J.) (defendants cold-called investors, developed relationships, recommended the investments, sent offering documents, took orders, helped with paperwork, "and, *most telling*, receiv[ed] transaction-based compensation for their efforts" (emphasis added));  *SEC v. Kramer*, 778 F. Supp. 2d 1320, 1334 (M.D. Fla. 2011) (receiving transaction-based compensation is "one of the hallmarks" of being a broker); *see also SEC v. Collyard*, 154 F. Supp. 3d 781, 790 (D. Minn. 2015) (some courts "place great weight on

whether the defendant received commissions"); *Landegger v. Cohen*, 2013 WL 5444052, at *6

(D. Colo. Sept. 30, 2013) (court finds that receipt of transaction-based compensation and

regularity of participation "*should be afforded heightened weight in the calculus*" (emphasis in

original)); *Sun River Energy, Inc. v. Nelson*, 2013 WL 1222391, at *5 (D. Colo. Mar. 25, 2013)

(many courts find incentive-based compensation to be particularly indicative of broker-type

activities); *see generally SEC v. Gagnon*, 2012 WL 994892, at *11 (E.D. Mich. Mar. 22, 2012)

(among other broker factors, defendants received transaction-based compensation).

    2.   *The Complaint sufficiently pleads facts showing Charlet acted as a broker.*

    The Complaint contains explicit factual allegations that allege far more than a

"formulaic" or "bare bones" recitation of elements asserting how Charlet acted as a broker,

including, among other things, that:

- Couch Oil & Gas ("COG") hired Charlet to promote its offerings. (Complaint, at ¶18). While Charlet may have technically been an independent contractor (Complaint, at ¶¶ 10, 18), he represented himself to investors as a COG employee. (Complaint, at ¶ 21).

- Charlet received $835,912.67 in transaction-based compensation for closing sales, with such compensation directly tied to the investors' purchases of the COG investments (*Id.*, at ¶¶ 22, 23).

- After COG ceased selling its interests, Charlet became involved in selling another oil and gas investment in Oklahoma. The details of his actions with that investment are not included in the Commission's Complaint, as they are not relevant to his failure to register as a broker in connection with the COG sales. However, a reasonable inference may be drawn that he has sold other securities, based on the allegation that Charlet is a defendant in an Oklahoma state court lawsuit, which involves a separate alleged fraud scheme of selling the unregistered securities of a different oil and gas producer. (*Id.*, at ¶ 10).

- Charlet made "sales calls" to the individuals who expressed their interest. (*Id.*, at ¶ 19). Charlet reached out to the people who emailed the COG website expressing possible interest in COG offerings. (*Id.*). During those phone calls, Charlet gathered information from those prospective investors and gauged their interest. (*Id.*).

- Charlet disseminated COG's investment materials (including the glossy brochures). (*Id.*, at ¶ 20).  He also provided information to the prospective investors about COG's current offering, an overview of COG's operations, COG's drilling techniques and drilling plans, the performance of COG's prior drilling programs, expected returns and economic projections for the current program, and expected tax advantages. (*Id.*, at ¶ 19).

- Charlet made valuations as to the merits of COG's investments by recommending that the prospective investors purchase them and by persuading the prospective investors to purchase them. (*Id.*).

- As many investors never spoke to Charles Couch about investing, and only spoke with Charlet, Charlet actually "closed sales," meaning that he was the salesman responsible for persuading those investors to purchase a COG investment.  (*Id.*).

- Charlet sold or participated in selling 59 units of COG's 59 Well Program and 57 of COG's Radial 9 Well Program, clearly indicating a "regularity of participation" in the selling activity. (*Id.*, at ¶ 22).

These allegations expressly state a plausible claim under Exchange Act Section 15(a) that

Charlet offered and sold securities[5] to investors without being registered as a broker.[6]

> 3.    *Charlet's focus on the clause "for the account of others" is misplaced.*

In arguing that he was not a "broker," Charlet unduly emphasizes the phrase "for the

account of others" in the definitional clause of "effecting transactions for the account of others."

---

[5]   Charlet questions whether the Commission adequately pleaded that the COG interests Charlet offered and sold were securities, claiming the allegation that the investments were "fractional undivided working interests in the Programs' wells" is conclusory. (Motion, at 13 n. 8).  But the Fifth Circuit has held that the sale of "undivided fractional interests in oil and gas" constitutes the sale of a security.  *Adena Exploration, Inc. v. Sylvan*, 860 F.2d 1242, 1244-45 (5th Cir. 1988) (discussing the cases in five circuits that had already so held).  *See also Couch*, 2014 WL 7404127, at *8. The Commission has alleged sufficient detail to satisfy the facial plausibility test.

[6]   In addition, the Complaint describes how Charlet was an active, not passive, finder of prospective investors. Charlet enhanced COG's existing website and created other websites to provide information about COG's offerings. (Complaint, at ¶ 18).  A prospective investor could submit an indication of interest over that website, which would trigger a sales call to the investor by Charlet or one of the other Defendants. (*Id.*, at ¶ 19).  Thus, the COG website was the bait to lure investors into providing their contact information, thereby enabling Charlet and the other Defendants to sell them COG investments.  It was the means by which COG identified prospective investors to whom they could sell the offerings.  By working on COG's website, and by actively calling the investors who responded to the bait, Charlet was enmeshed in COG's particular method of identifying and soliciting investors for COG's products.

He contends that, to be a broker, the person must exercise *control* over the investor's account, even though such a requirement goes beyond the statute's express language and is contrary to the case law.  Indeed, Charlet's only authority is an interlocutory decision in *SEC v. Mapp*, No. 4:16-cv-246, 2017 WL 823559, at *17 (E.D. Tex. Mar. 2, 2017).  *Mapp* itself relied on *SEC v. M&A West, Inc.,* 2005 WL 1514101, at *9 (N.D. Cal. June 20, 2015), *aff'd in part and rev'd in part on other grounds*, 538 F.3d 1043 (9th Cir. 2008), and *SEC v. Kramer*, 778 F. Supp. 2d 1320 (M.D. Fla. 2011), both outlier cases outnumbered by the great weight of the law, in that they declined to find the defendant acted as a broker.

In *M&A West*, the defendant neither offered nor sold securities, but instead worked with private company shareholders to execute reverse mergers by identifying suitable public shell companies, preparing documents for the mergers, and coordinating among the various parties. *M&A West, Inc.,* 2005 WL 1514101, at *3.  The *M&A West* court held that such activities were more akin to work performed by lawyers and paralegals orchestrating business transactions, and not traditional broker conduct.  *Id.*, at *9.  Similarly, the defendant in *Kramer* merely opined to family, friends, and intimates that the issuer was a good company and a good investment, and directed those prospective investors' attention to the issuer's website and press releases. *Kramer*, 778 F. Supp. 2d at 1339-1340.

Notwithstanding stark factual dissimilarities between this case on one hand and *Kramer* and *M&A West* on the other*,* neither *M&A West* nor *Kramer* actually require that "control" over the accounts of others be pleaded as an essential element for claims under Exchange Act Section 15(a).  Even *Mapp* agrees that, at most, the cases "*suggest* that control over the account of others is an element rather than a factor."  *Mapp*, 2017 WL 823559, at *17 (emphasis added).

*Mapp* is factually dissimilar to the circumstances presented in this case. The closest analog to the facts presented here is actually *SEC v. Mieka Energy Corp.*, 2017 WL 1739767 (E.D. Tex. May 4, 2017), a recent decision by the same court that issued the *Mapp* order. In *Mieka*, two salesmen were found to be brokers because they called potential investors, discussed potential investors' investment histories, sent offering documents to potential investors, recommended investments in Mieka Energy, helped investors with paperwork, and received transaction-based compensation. *Id.*, at *4-5. On these allegations, and noting that "[i]ndeed, courts perceive 'transaction-based compensation' to be a hallmark that a person is a broker," the court found that the two individuals were acting as unregistered brokers. *Id.*, at 4 (citing, *inter alia*, *SEC v. Helms,* 2015 WL 5010298, at *16–17 (W.D. Tex. Aug. 21, 2015)).

Charlet participated in the sale of COG investments, contacted investors, provided advice and other information about the COG investments, helped lure prospective investors into providing their contact information so that telephonic sales calls could be made, made telephonic sales calls to investors, distributed promotional material for COG, closed sales, directed investors to send checks or wire funds to COG, communicated with investors after they invested, and received commissions tied directly to the sales he transacted. (Complaint, at ¶¶ 18-19, 21-24).

  4.  *The Commission is not required to plead that Charlet acted as an agent.*

Charlet also argues that in order to be a "broker," one must act as an "agent" of the purchaser, relying on *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cheng*, 901 F.2d 1124, 1128-29 (D.C. Cir. 1990). (Motion, at 15-16). But *Merrill Lynch* had nothing to do with determining whether the defendant was a broker required to be registered under Section 15(a). *See id.*, at 1126. Rather, that case considered whether a registered representative employed by Merrill Lynch was required to inform a brokerage customer that the customer could reject

unauthorized trades the broker made in the customer's account.  *Id.*, at 1128-29.  Hence, *Merrill Lynch* is irrelevant and has no bearing on the sufficiency of the Complaint in this case. That the Commission did not allege that Charlet acted as the "agent" of his investors is, consequently, of no moment.

   *5.   The Complaint alleges facts establishing that Charlet was not a mere "finder."*

   Charlet also argues that his activities as alleged in the Complaint only rise to the level of a "finder," not a broker.  (Motion, at 17).   But there is no "finder exception" under Section 15(a)—Congress has never enacted a finder exception and the Commission has never used its exemptive authority to create one.  And courts relying on a supposed finder exception have often referred to no-action letters issued by Commission staff, even though such letters are statements that the staff "won't recommend prosecution *just now*, and *just so long as conditions are satisfied.*" *Bd. of Trade of City of Chicago v. SEC*, 883 F.2d 525, 529 (7th Cir. 1989) (emphasis in original). Such statements "constitute neither agency rule-making nor adjudication." *Gryl ex rel. Shire Pharm. Grp. PLC v. Shire Pharm. Grp. PLC*, 298 F.3d 136, 145 (2d Cir. 2002).

   Nevertheless, Charlet's argument plainly ignores the Complaint's explicit statements that he located investors, called them, "beautified" and provided them offering documents, discussed COG operations and profit expectations with them, recommended investors invest in COG, directed them to submit checks and wire funds, and was compensated based on the number of sales he closed—more than 100.  (Complaint, at ¶¶ 18-23). Whereas some courts have concluded that merely bringing two parties together without involvement in the negotiation of a price or any other actions might make a defendant a mere "finder," it is beyond reasonable dispute that the Complaint alleges ample and numerous details illustrating how Charlet's conduct went well beyond such limited involvement in the offer and sale of COG securities.  *See, e.g., Gagnon,*

2012 WL 994892, at * 11 (defendant was a broker because he solicited investors "acting as the link between the issuer and the investor; advised investors about the merits of the investment program; and received transaction-based compensation).

## IV.
## REQUEST FOR LEAVE TO AMEND COMPLAINT

Should the Court conclude that the Commission insufficiently pleaded any facts or claims for relief, the Commission expressly and respectfully requests leave to amend the Complaint. Rule 15 of the Federal Rules of Civil Procedure gives trial courts discretion to permit a party to amend its complaint before trial, and directs courts to "freely give leave when justice so requires."  FED. R. CIV. P. 15.  Courts liberally grant leave to amend pleadings when Rule 12(b)(6) dismissal is at stake.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (Rule 15(a), declaring that leave to amend "shall be freely given when justice so requires," is a mandate "to be heeded").  Consequently, the Commission contends that it is entitled, and should be given leave, to amend its Complaint if the Court finds favor with any part of Defendant's Motion.

## V.
## CONCLUSION

For all of the foregoing reasons, Plaintiff Securities and Exchange Commission respectfully requests that the Court deny Defendant's Rule 12(b)(6) Motion to Dismiss and grant Plaintiff such other relief to which it may be justly entitled.

Dated:  May 24, 2017.                    Respectfully submitted,

                                         */s/ Janie L. Frank*
                                         Janie L. Frank
                                         Texas Bar No. 07363050
                                         SECURITIES AND EXCHANGE COMMISSION
                                         Fort Worth Regional Office
                                         Burnett Plaza, Suite 1900
                                         801 Cherry Street, Unit #18
                                         Fort Worth, TX 76102-6882
                                         (817) 978-6478
                                         (817) 978-4927 (facsimile)
                                         *frankj@sec.gov*

                                         COUNSEL FOR PLAINTIFF UNITED STATES
                                         SECURITIES AND EXCHANGE COMMISSION

### CERTIFICATE OF SERVICE

On May 24, 2017, I electronically submitted the foregoing document with the Clerk of the Court of the U.S. District Court, Northern District of Texas, Dallas Division, using the CM/ECF system.  The electronic case filing system will send a "Notice of Electronic Filing" to all counsel of record who has consented in writing to accept service of this document by electronic means.

                                         *s/ Janie L. Frank*
                                         Janie L. Frank