**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | Civil Action No. 3:17-cv-000139-D |
| ROBIN GLEN CHARLET, STEVEN WILLIAM SPARKS, GREGORY JOHN TUTHILL, and KIRK DEAN PORTER, | § § § § § | |
| *Defendants*. | § § | |

**DEFENDANT ROBIN GLEN CHARLET'S
<u>REPLY IN SUPPORT OF MOTION TO DISMISS</u>**

      Jason S. Lewis
      State Bar No. 24007551
      Email: lewisjs@gtlaw.com

      Casey L. Moore
      Texas Bar No. 24055997
      Email: moorec@gtlaw.com

      Greenberg Traurig, LLP
      2200 Ross Avenue, Suite 5200
      Dallas, TX 75201-2784
      Telephone: (214) 665-3600
      Facsimile: (214) 665-3601

      ATTORNEYS FOR DEFENDANT
      ROBIN GLEN CHARLET

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................... 1

II.  ARGUMENT AND AUTHORITIES.................................................................... 1

    A.   The Disgorgement Sought by the Commission is a Penalty under *Kokesh*
        and is Consequently Unavailable.......................................................................... 1

    B.   Section 2462 Bars the Commission's Claims. ....................................................... 4

        1.   The Commission Cannot Bring a Claim for Civil Penalties,
            Disgorgement, or Injunctive Relief Based on Conduct that
            Occurred Outside of Limitations. ............................................................. 4

        2.   The Continuing Violations Doctrine, Even if Applicable in Some
            SEC Enforcement Actions (a Conclusion Inconsistent with
            Supreme Court Precedent), Would Be Inapplicable to the
            Violations Alleged Here. .......................................................................... 7

    C.   The Complaint Fails to Plausibly Allege that Mr. Charlet Acted as a
        Broker. ................................................................................................................... 9

III. CONCLUSION....................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*Albertson v. T.J. Stevenson & Co.*,
   749 F.2d 223 (5th Cir. 1984) ................................................................................................5

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .............................................................................................................10

*Celsion Corp. v. Stearns Mgmt. Corp.*,
   157 F. Supp. 2d 942 (N.D. Ill. 2001) ..................................................................................7, 9

*Gabelli v. SEC*,
   568 U.S. 442 (2013) ........................................................................................................1, 4, 8

*Great-W. Life & Annuity Ins. Co. v. Knudson*,
   534 U.S. 204 (2002) ..............................................................................................................2

*Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*,
   527 U.S. 308 (1999) ..............................................................................................................2

*Johnson v. SEC*,
   87 F.3d 484 (D.C. Cir. 1996) ................................................................................................6

*Kokesh v. SEC*,
   137 S. Ct. 1635 (2017) ..........................................................................................1, 2, 3, 4, 5

*Montanile v. Bd. of Trustees of Nat. Elevator Indus. Health Benefit Plan*,
   136 S. Ct. 651 (2016) ............................................................................................................3

*Nat'l R.R. Passenger Corp. v. Morgan*,
   536 U.S. 101 (2002) ..............................................................................................................7

*O'Connor v. City of Newark*,
   440 F.3d 125 (3d Cir. 2006) .................................................................................................8

*Raiford v. Buslease, Inc.*,
   825 F.2d 351 (11th Cir. 1987) ..............................................................................................5

*Rotella v. Wood*,
   528 U.S. 549 (2000) ..............................................................................................................4

*SEC v. Arcturus Corp.*,
   171 F. Supp. 3d 512 (N.D. Tex. 2016) .................................................................................5

*SEC v. Bartek*,
   484 Fed. App'x. 949 (5th Cir. 2012) ....................................................................................6

*SEC v. Geswein*,
   2 F. Supp. 3d 1074 (N.D. Ohio 2014) ..................................................................................7

*SEC v. Huff*,
   758 F. Supp. 2d 1288 (S.D. Fla. 2010), *aff'd*, 455 Fed. App'x. 882 (11th Cir. 2012) ...........7, 9

*SEC v. Kelly*,
    663 F. Supp. 2d 276 (S.D.N.Y. 2009)................................................................................7

*SEC v. Kovzan*,
    807 F. Supp. 2d 1024 (D. Kan. 2011) ................................................................................7

*SEC v. Offill*,
    No. 3:07-CV-1643-D, 2012 WL 246061 (N.D. Tex. Jan. 26, 2012) .......................................10

*SEC v. Ogle*,
    No. 99 C 609, 2000 WL 45260 (N.D. Ill. Jan. 11, 2000) ...............................................7, 8

*SEC v. Pentagon Capital Mgmt. PLC*,
    725 F.3d 279 (2d Cir. 2013) ...............................................................................................5

*SEC v. Strebinger*,
    114 F. Supp. 3d 1321 (N.D. Ga. 2015) ..............................................................................7

*SEC v. Caserta*,
    75 F. Supp. 2d 79 (S.D.N.Y. 1999) ....................................................................................7

*SEC v. Jones*,
    2006 WL 1084276 (S.D.N.Y. April 25, 2006) ...................................................................7

*SEC v. Mapp*,
    4:16-CV-246, 2017 WL 823559 (E.D. Tex. Mar. 2, 2017) ..............................................10

*SEC v. Mieka Energy Corp.*,
    No. 2017 WL 1739767 (E.D. Tex. May 4, 2017) ..............................................................9

*Swenson v. Engelstad*,
    626 F.2d 421 (5th Cir. 1980) .............................................................................................5

*Tarpley v. Texaco, Inc.*,
    No. CA 3-96-CV-3209-R, 1998 WL 133122 (N.D. Tex. Mar. 16, 1998) .........................5

*Tull v. United States*,
    481 U.S. 412 (1987)...........................................................................................................2

*U.S. v. Bernard*,
    202 F. 728 (9th Cir. 1913) .................................................................................................3

*Wallace v. Kato*,
    549 U.S. 384 (2007)...........................................................................................................4

*Whitaker Chalk Swindle & Sawyer, LLP v. Dart Oil & Gas Corp.*,
    No. 408-CV-684-Y, 2009 WL 464989 (N.D. Tex. Feb. 23, 2009) ...................................5

**Statutes**

15 U.S.C. § 78u(d)(5) ................................................................................................2, 3, 4

28 U.S.C. 2462................................................................................................... *passim*

**Other Authorities**

30A C.J.S. EQUITY § 67 .................................................................................................................2

Russel G. Ryan, *The Equity Façade of SEC Disgorgement*, 4 HARV. BUS. L. REV.
    ONLINE 1 (2013)..........................................................................................................1

Defendant Robin Glen Charlet files this Reply in Support of Motion to Dismiss ("Motion"), and respectfully shows the Court as follows:

## I. INTRODUCTION

In *Kokesh v. SEC*, 137 S. Ct. 1635 (2017), the Supreme Court held that the disgorgement sought by the Commission in enforcement actions such as this one is a "penalty," *id.* at 1643–44, and penalties are not available in equity. Accordingly, after *Kokesh*, disgorgement is not available to the Commission regardless of the statute of limitations. Moreover, even if disgorgement were available, 28 U.S.C. 2462 bars any action seek seeking "a fine, penalty, or forfeiture" based on conduct that took place outside of limitations. *Kokesh*, 137 S. Ct. at 1639; *Gabelli v. SEC*, 568 U.S. 442, 448–50 (2013). The Commission has not pointed to facts sufficient to identify a single sale of an unregistered security by Mr. Charlet within the two-week period that is within limitations—January 13 through 28, 2012. The Complaint should be dismissed. The Commission's claim for violation of Section 15(a) should also be dismissed because the Complaint fails to plausibly allege that Mr. Charlet was in the business of acting as a broker.

## II. ARGUMENT AND AUTHORITIES

**A. The Disgorgement Sought by the Commission is a Penalty under *Kokesh* and is Consequently Unavailable.**

Under *Kokesh*, the "disgorgement" remedy sought by the Commission is not only time-barred, but unavailable. Since 1970, courts have awarded disgorgement in SEC enforcement actions under the rationale that it is an equitable remedy available via the court's inherent equity powers. *See* Russel G. Ryan, *The Equity Façade of SEC Disgorgement*, 4 HARV. BUS. L. REV. ONLINE 1, 2–5 & n.13 (2013) (discussing the history of the disgorgement remedy in SEC enforcement actions and observing that "any resemblance to a truly equitable remedy largely

disappears in most cases"). In 2010, Congress expressly authorized the SEC to seek "*any equitable relief* that may be appropriate or necessary for the benefit of investors." 15 U.S.C. § 78u(d)(5) (emphasis added). The statutory term "equitable relief" refers to relief available in the courts of equity "in the days of the divided bench." *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002); *cf. Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 318–19 (1999) (explaining that in federal court "the substantive prerequisites for obtaining an equitable remedy . . . depend on traditional principles of equity jurisdiction" (internal citation omitted)).

In *Kokesh*, the Court held that disgorgement in SEC enforcement actions is a "penalty." 137 S. Ct. at 1639. The Court provided three explanations for this conclusions: First, "SEC disgorgement is imposed by the courts as a consequence for violating . . . public laws." *Id.* at 1643. Second, "SEC disgorgement is imposed for punitive purposes." *Id.* Third, "SEC disgorgement is not compensatory" in "many cases." *Id.* at 1644. The Court rejected the Commission's contention that disgorgement is "remedial" and that it cannot be a penalty because it "serves compensatory goals in some cases."[1] The Court explained that "[b]ecause disgorgement orders 'go beyond compensation, are intended to punish, and label defendants wrongdoers' as a consequence of violating public laws, they represent a penalty." *Id.* at 1645 (internal citation omitted).[2]

Courts of equity "refuse to aid in th[e] enforcement" of a penalty. 30A C.J.S. EQUITY § 67; *see Tull v. United States*, 481 U.S. 412, 424 (1987) (explaining that "a court in equity may

---

[1] The Court did not limit its reasoning to the particular disgorgement order before it; *Kokesh*'s reasoning makes clear that even if disgorgement were compensatory in a particular case, it would still constitute a penalty.

[2] In *Kokesh*, the Court signaled its concerns about the disgorgement sought by the Commission, taking pains to point out that "[n]othing in this opinion should be interpreted as an opinion on whether courts possess authority to order disgorgement in SEC enforcement proceedings or on whether courts have properly applied disgorgement principles in this context." *Kokesh*, 137 S. Ct. at 1642 n.3.

award monetary restitution as an adjunct to injunctive relief, [but] it may not enforce civil penalties"); *U.S. v. Bernard*, 202 F. 728, 732 (9th Cir. 1913) (explaining that a court sitting in equity "has no authority to assess exemplary damages" as punishment, such that "[b]y applying to a court of equity for relief, the complainant waives all claim to vindictive damages"). The disgorgement sought by the SEC is a penalty, and penalties are not "equitable relief" available under 15 U.S.C. § 78u(d)(5). *Kokesh*, 137 S. Ct. at 1645. The Supreme Court's holding in *Kokesh* is dispositive of the Commission's request for disgorgement as an equitable remedy.

In addition, the courts of equity had no concept of "disgorgement" in the sense it is used by the Commission. Unlike legal remedies, "equitable remedies 'are, as a general rule, directed against some specific thing; they give or enforce a right to or over some particular thing . . . rather than a right to recover a sum of money generally out of the defendant's assets.'" *Montanile v. Bd. of Trustees of Nat. Elevator Indus. Health Benefit Plan*, 136 S. Ct. 651, 658–59 (2016). A court of equity might order restitution "where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession," *id.*, but that is not what the Commission seeks here. Rather, the Commission seeks a money judgment—"a quintessential action at law"—against Mr. Charlet. *Id.*[3] The Complaint points to no specific thing that Mr. Charlet could disgorge. For instance, it identifies neither property on which a constructive trust could be imposed nor an identifiable fund traceable to the commissions allegedly received.

---

[3] The Supreme Court explained that the legal (as opposed to equitable) remedy of a money judgment for restitution was available "[i]n cases in which the plaintiff 'could not assert title or right to possession of particular property, but in which nevertheless he might be able to show just grounds for recovering money to pay for some benefit the defendant had received from him.'" *Id.* The legal remedy of a money judgment is not an "equitable remedy" authorized by Congress. Even if the legal remedy were available, the Commission does not allege that it conferred a benefit on Mr. Charlet for which restitution should be ordered. Even if investors could seek restitution at law in the form of a money judgment for amounts paid to Mr. Charlet as a result of their investments, the Commission does not stand in their shoes and cannot do the same.

3

When Congress enacted 15 U.S.C. § 78u(d)(5), it imposed an important limit on the equitable relief available to the Commission: such relief must be "appropriate or necessary for the benefit of investors." A money judgment to be paid into the United States treasury would fail to meet this requirement, as it would provide no benefit to investors whatsoever. As such, to the extent the Commission seeks to have any disgorgement amount paid into the treasury, rather than to investors, no disgorgement is available.

**B.     Section 2462 Bars the Commission's Claims.**

On June 5, 2017, the Supreme Court unanimously rejected the Commission's argument that there is no time limit on actions it brings seeking disgorgement—making clear that the Commission is barred from seeking not only statutory civil penalties, but also disgorgement of profits received as a result of alleged conduct that occurred outside the five-year limitations period. *Kokesh*, 137 S. Ct. at 1639, 1645. "Statutes of limitations are intended to 'promote justice by preventing surprises through the revival of claims that have been allowed to slumber.'" *Gabelli v. SEC*, 568 U.S. 442, 448 (2013) (quoting *Rotella v. Wood*, 528 U.S. 549, 555 (2000)). Even if disgorgement were available under *Kokesh*—and it is not—the Commission allowed its claims against Mr. Charlet to slumber.

**1.     The Commission Cannot Bring a Claim for Civil Penalties, Disgorgement, or Injunctive Relief Based on Conduct that Occurred Outside of Limitations.**

The Commission is barred from seeking any "penalty" unless it can show that Mr. Charlet committed an actual violation of the securities laws between January 13 and January 28, 2012. *Kokesh*, 137 S. Ct. at 1639; *Gabelli*, 568 U.S. at 453. "[A] claim accrues 'when the plaintiff has a complete and present cause of action.'" *Gabelli*, 568 U.S. at 448 (quoting *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Here, the Commission had a complete and present cause of

4

action at the time of any unregistered sale.[4] The Commission argues that it should be able to reach all funds *received* within limitations (even if the sales took place outside of limitations) because "the Commission's disgorgement claims accrued when Charlet received the money." [ECF No. 16 at 13.] This contention is unavailing: Sections 5 and 15(a) are violated by unregistered sales, not by receiving compensation, and consequently the causes of action accrue at the time of sale. Indeed, the Commission concedes that the alleged unlawful conduct occurred upon each unregistered sale, arguing that "Charlet was not registered as a broker when he offered and sold unregistered securities, . . . *such conduct* broke the law, and . . . he received . . . transaction-based compensation for those violations." [ECF No. 16 at 15 (emphasis added); *see also id.* at 17 ("A party violates Exchange Act Section 15(a) if he effects transactions in, or induces, or attempts to induce the purchase or sale of any security without being registered as a broker or dealer.").] Receipt of compensation is not an element of a Section 5 or 15(a) claim.[5]

Furthermore, it is well established that, generally, a claim accrues when the underlying wrongful conduct and injury occurs, even if the full extent of damages is not yet ascertainable.[6] Consistent with this principle, Courts apply Section 2462 to conduct, not receipt of funds. *See, e.g., SEC v. Pentagon Capital Mgmt. PLC*, 725 F.3d 279, 287 (2d Cir. 2013) ("any profit earned

---

[4] *See Raiford v. Buslease, Inc.*, 825 F.2d 351, 354 (11th Cir. 1987) (citing *Swenson v. Engelstad*, 626 F.2d 421, 425 (5th Cir. 1980)) (discussing elements of Section 5 claims); *SEC v. Arcturus Corp.*, 171 F. Supp. 3d 512, 532 (N.D. Tex. 2016) (Kinkead, J.) (discussing elements of Section 5 and 15(a) claims).

[5] Indeed, the Commission's argument is internally inconsistent on this point: the Commission correctly acknowledges that "disgorgement is a remedy, not a claim or cause of action" [ECF No. 16 at 15], but also argues (incorrectly) that "the Commission's *disgorgement claims* accrued when Charlet received the money" [*id.* at 13 (emphasis added)]. Mr. Charlet agrees that disgorgement is a remedy, not a substantive cause of action (though any "action" to "enforce" it must be brought within limitations, *see Kokesh*, 137 S. Ct. at 1639).

[6] *See, e.g., Albertson v. T.J. Stevenson & Co.*, 749 F.2d 223, 229 (5th Cir. 1984); *Whitaker Chalk Swindle & Sawyer, LLP v. Dart Oil & Gas Corp.*, No. 408-CV-684-Y, 2009 WL 464989, at *9 (N.D. Tex. Feb. 23, 2009) (Means, J.); *Tarpley v. Texaco, Inc.*, No. CA 3-96-CV-3209-R, 1998 WL 133122, at *4 (N.D. Tex. Mar. 16, 1998) (Buchmeyer, C.J.).

5


through late trading earlier than five years before the SEC instituted its suit against the defendants may not be included as part of the civil penalty").

The Commission has not identified a single sale by Mr. Charlet that occurred within limitations. Rather, it vaguely alleges that "Defendants" continued to sell the COG securities until January 28, 2013, without identifying any actual sales by Mr. Charlet himself. Mr. Charlet is left to wonder whether it is he or one of the other three defendants that the SEC alleges made sales during this two-week period. The Complaint fails to provide fair notice, and allowing the Commission to avoid informing Mr. Charlet (and the Court) whether Mr. Charlet is alleged to have made any sales within limitations would be a monumental waste of resources.[7] At the very least, the Commission must be required to identify whether Mr. Charlet is alleged to have made any sales within limitations.

Section 2462 also applies to the injunction sought by the Commission. *Kokesh* teaches that Section 2462 is to be applied with an eye toward the practical import of the government's actions—rather than the label used by the government—underscoring the Fifth Circuit's conclusion that claims for injunctive relief are likewise barred where they are punitive. "A 'penalty,' as the term is used in § 2462, is a form of punishment imposed by the government for unlawful or proscribed conduct, which goes beyond remedying the damage caused to the harmed parties by the defendant's action." *SEC v. Bartek*, 484 Fed. App'x. 949, 956 (5th Cir. 2012) (quoting *Johnson v. SEC*, 87 F.3d 484, 487 (D.C. Cir. 1996)). An injunction ordering Mr. Charlet to follow the law in the future would have absolutely no remedial effect on any parties harmed, as the underlying fraud was remedied when the Commission successfully resolved its

---

[7] The Commissions points out that in some instances the Complaint refers to "each Defendant" and argues that this word choice means that all of them engaged in the alleged conduct; but crucially, none of these instances details when sales allegedly took place. [ECF No. 16 at 17 (citing ECF No. 1 ¶¶ 17–19, 21).] Given that the Commission has alleged a specific date on which the sales terminated, it is evident that the Commission is aware of when sales occurred and has simply failed to allege these facts.

fraud actions against Couch and COG on May 9, 2016. It could only serve to punish him for his alleged sales of unregistered securities in the past.

> 2. **The Continuing Violations Doctrine, Even if Applicable in Some SEC Enforcement Actions (a Conclusion Inconsistent with Supreme Court Precedent), Would Be Inapplicable to the Violations Alleged Here.**

As the Fifth Circuit has explained, the continuing violations doctrine exists to account for causes of action where conduct taking place over a period of time constitutes "a 'single unlawful . . . practice,'" or a single violation. *Heath*, 850 F.3d at 740 (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117–18 (2002)). Even if the continuing violations doctrine may sometimes be appropriate in the Commission's enforcement actions—such as where a scheme to defraud involves actions taking place both within and without the limitations period—it would have no application here.[8] Every one of the cases relied upon by the SEC for the proposition that the continuing violations doctrine applies in securities cases [ECF No. 16 at 14–15] involved securities fraud schemes, not the type of freestanding technical violations alleged here.[9] The Commission's claims against Mr. Charlet are based on discrete actions—each sale of an unregistered security (Section 5) and each sale by an unregistered broker (Section 15(a))—not a single unified course of conduct.

---

[8] As the Commission recognizes, courts have questioned this doctrine's viability in securities actions. *See, e.g.*, *SEC v. Jones*, 2006 WL 1084276, at *4–5 (S.D.N.Y. April 25, 2006); *Celsion Corp. v. Stearns Mgmt. Corp.*, 157 F. Supp. 2d 942, 948 (N.D. Ill. 2001); *SEC v. Caserta*, 75 F. Supp. 2d 79, 89 (S.D.N.Y. 1999).

[9] *See SEC v. Strebinger*, 114 F. Supp. 3d 1321, 1328 (N.D. Ga. 2015) ("the SEC's claims are based on one continuous fraudulent scheme that encompasses several individual acts"); *SEC. v. Geswein*, 2 F. Supp. 3d 1074, 1077, 1084 (N.D. Ohio 2014) (claims for scheme liability); *SEC v. Huff*, 758 F. Supp. 2d 1288, 1341 (S.D. Fla. 2010), *aff'd*, 455 Fed. App'x. 882 (11th Cir. 2012) (in a securities fraud case, explaining that claims may "necessarily take time to detect"); *SEC v. Kelly*, 663 F. Supp. 2d 276, 288 (S.D.N.Y. 2009) (each "step in a 'scheme to defraud'" may be "viewed as part of a continuing practice" and consequently the continuing violations doctrine allows the claims where the "last affirmative misstatement" was made within limitations); *SEC v. Ogle*, No. 99 C 609, 2000 WL 45260, at *5 (N.D. Ill. Jan. 11, 2000) (market manipulation fraud claims). *SEC v. Kovzan*, 807 F. Supp. 2d 1024 (D. Kan. 2011) is not only a fraud case, *id.* at 1037, but has been abrogated by *Gabelli*, as the *Kovzan* court held that the discovery rule applied, *id.* at 1028–35.

The Fifth Circuit's explanation of the continuing violations doctrine in employment discrimination is applicable here: "discrete acts that form the basis of traditional discrimination claims," such as retaliatory discharge, are to be distinguished "from continuing conduct that forms the basis of hostile work environment claims." *Heath*, 850 F.3d at 737. A hostile work environment claim is premised on "the cumulative effect of a thousand cuts, rather than on any particular actions taken by the defendant, so the filing clock cannot begin running with the first act, because at that point the plaintiff has no claim." *Id.* (quoting *O'Connor v. City of Newark*, 440 F.3d 125, 128 (3d Cir. 2006)) (internal quotation marks omitted). The same could be said of many securities fraud schemes. *See, e.g.*, *Ogle*, 2000 WL 45260, at *5 ("Market manipulation by definition involves violations over time."). Not so here: the filing clock begins running upon the first unregistered sale. The continuing violations doctrine has no place in this case, even if it were applicable to *some* enforcement actions by the Commission. As such, the Court need not reach the question whether the continuing violations doctrine may be applicable under certain circumstances.

Should the Court reach the question, application of the continuing violations doctrine to Section 2462's limitations period is inconsistent with governing law. Like the discovery rule, the continuing violations doctrine exists to delay the accrual of a claim based on equitable considerations. *See Gabelli*, 568 U.S. at 449 (under the discovery rule, "accrual is delayed 'until the plaintiff has discovered' his cause of action"); *Heath*, 850 F.3d at 740 ("the continuing violation doctrine is a federal common law doctrine governing accrual"). And the Supreme Court has signaled that such delay is inappropriate here: "[u]nlike [a] private party who has no reason to suspect fraud, the SEC's very purpose is to root it out, and it has many legal tools at hand to aid in that pursuit." *Gabelli*, 568 U.S. at 451. The Commission *did* root out Couch and

8

COG's underlying fraud well within limitations, but did not bring this action for Mr. Charlet's alleged technical violations until nearly three years later. The Supreme Court has made clear that Section 2462 is not susceptible to the broad range of equitable doctrines espoused by the Commission.

The Commission suggests that the doctrine should be applied because some violations of the securities laws "necessarily take time to detect." [ECF No. 16 (quoting *Huff*, 758 F. Supp. 2d at 1340–41).] Such reasoning is inapposite here: unlike *Huff*, which involved a long-running unified scheme to defraud investors, there is nothing about soliciting investors without the assistance of a registered broker that is covert or difficult to detect; either the broker is registered or not." *Celsion*, 157 F. Supp. 2d at 948 (declining to apply the continuing violations doctrine to a Section 15(a) violation).

### C. The Complaint Fails to Plausibly Allege that Mr. Charlet Acted as a Broker.

The Complaint falls far short of plausibly showing that Charlet engaged in conduct that qualifies him as a broker. The Commission's reliance on *SEC v. Mieka Energy Corp.*, No. 2017 WL 1739767 (E.D. Tex. May 4, 2017) is misplaced [ECF No. 16 at 22–23]. In *Mieka*, the court found the defendants acted as broker-dealers based on having "develop[ed] relationships by discussing the investor's investment history over a period of weeks" and "recommending investment with [defendant]" on that basis. *Id.* at *4; *see id.* at *2. Here, the Commission does not allege that Mr. Charlet was provided information about investors' financial condition or investment goals such that he could provide substantive "recommendations."[10] Rather, the Commission alleges that "Defendants enhanced COG's existing website" [ECF No. 1 ¶ 18] and

---

[10] The bare assertion that Mr. Charlet "made recommendations" [ECF No. 1 ¶ 19] to investors is a clear reference to the allegation that he took calls from potential investors and informed them about the COG programs. If this context is not taken into account, the allegation of "ma[king] recommendations" is so vague that it does not provide fair notice of the alleged misconduct. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 565 n.10 (2007) (applying contextual analysis to determine whether the complaint has made the requisite showing).

9

"Couch prepared the contents of these documents" [id. ¶ 20]. A broker must do more than beautify marketing materials and answer the phone. *Mieka* undermines the Commission's position.

If anything, the Commission has alleged facts showing that Mr. Charlet merely acted as a "finder," or someone who "bring[s] the parties together with no involvement on [his] part in negotiating the price or any of the other terms of the transaction." *See SEC v. Offill*, No. 3:07-CV-1643-D, 2012 WL 246061, at *7 (N.D. Tex. Jan. 26, 2012) (Fitzwater, C.J.). Glaringly absent from the Complaint is any allegation that Mr. Charlet was involved in "negotiating the price or any of the terms"—furthermore, the Complaint alleges that Charlet never had control of the investor's money or received their funds [ECF No. 1 ¶ 22]. *See SEC v. Mapp*, 4:16-CV-246, 2017 WL 823559, at *17–18 (E.D. Tex. Mar. 2, 2017) ("The Commission failed to allege that assets were entrusted to [the alleged broker] or that he was authorized to transact for the account of others.") The Commission does not plausibly allege that Mr. Charlet's marketing acts were anything more than those of a finder. *See Offill*, 2012 WL 246061, at *7.

### III. CONCLUSION

The disgorgement sought by the Commission is unavailable under *Kokesh*, the Commission has failed to allege a single unregistered sale within limitations, and the Complaint does not plausibly allege that Mr. Charlet acted as a broker. Mr. Charlet prays that the Court grant the Motion, that all claims against him be dismissed with prejudice, and that he be awarded all other relief that is just and proper.

Dated: July 21, 2017                    Respectfully submitted,


                                        /s/ Casey L. Moore
                                        Jason S. Lewis
                                        State Bar No. 24007551
                                        Email: lewisjs@gtlaw.com

                                        Casey L. Moore
                                        Texas Bar No. 24055997
                                        Email: moorec@gtlaw.com

                                        Greenberg Traurig, LLP
                                        2200 Ross Avenue, Suite 5200
                                        Dallas, TX 75201
                                        Telephone: (214) 665-3600
                                        Facsimile: (214) 665-3601

                                        ATTORNEYS FOR DEFENDANT
                                        ROBIN GLEN CHARLET


**CERTIFICATE OF SERVICE**

I hereby certify that on July 21, 2017, a true and correct copy of the foregoing document was served via the Court's ECF system upon all counsel of record that are registered ECF users.

                                        /s/ Casey L. Moore

*DAL 79933948v1*