# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| v. | § | **CASE NO.  3:17-cv-00139-D** |
| | § | |
| ROBIN GLEN CHARLET, | § | |
| STEVEN WILLIAM SPARKS, | § | |
| GREGORY JOHN TUTHILL, and | § | |
| KIRK DEAN PORTER, | § | |
| | § | |
| | § | |
| **Defendants.** | § | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO
## DEFENDANT SPARKS'S RULE 12(b)(6) MOTION TO DISMISS

Dated:  August 4, 2017.

Respectfully submitted,

*/s/ Janie L. Frank*
Janie L. Frank
Texas Bar No. 07363050
SECURITIES AND EXCHANGE COMMISSION
Fort Worth Regional Office
Burnett Plaza, Suite 1900
801 Cherry Street, Unit #18
Fort Worth, TX 76102-6882
(817) 978-6478
(817) 978-4927 (facsimile)
*frankj@sec.gov*

COUNSEL FOR PLAINTIFF UNITED STATES
SECURITIES AND EXCHANGE COMMISSION

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...............................................................................iii-viii

I.   SUMMARY OF THE COMMISSION'S OPPOSITION ................................1

II.  FACTUAL ALLEGATIONS CONCERNING SPARKS ...............................3

III. ARGUMENTS AND AUTHORITIES..........................................................5

    A.   The standard for determining Rule 12(b)(6) motions is liberal,
        and the Complaint is construed in the Plaintiff's favor ........................................5

    B.   Disgorgement remains a viable remedy after *Kokesh*..........................................7

        1.   *Kokesh* did not hold that disgorgement was no longer an
            available remedy .................................................................................7

        2.   Legislative history and statutory construction confirm
            that the disgorgement remedy was contemplated and approved
            by Congress.........................................................................................9

        3.   *Kokesh*'s rationale that disgorgement is a penalty for
            limitations purposes only conforms to case law that
            disgorgement is available as remedy ......................................................15

    C.   The accrual date for limitations on disgorgement differs from the
        accrual date for a civil penalty ............................................................................17

    D.   *Kokesh* also did not hold that the Commission's right to seek
        injunctive relief is subject to the statute of limitations .......................................20

        1.   Defendants misread *Kokesh*.....................................................................20

        2.   Statutory construction demonstrates that injunctions are not
            penalties for § 2462 purposes .................................................................21

        3.   Courts have consistently held—both before and after
            Kokesh—that injunctions are not penalties and not subject
            to limitations .....................................................................................23

        4.   Cases holding injunctions are penalties do not so hold as a
            matter of law .....................................................................................26

E.      The Complaint sufficiently alleges that Sparks acted as an unregistered broker, thereby violating Exchange Act Section 15(a) ..................28

IV.     REQUEST FOR LEAVE TO AMEND COMPLAINT .................................................31

V.      CONCLUSION.............................................................................................................31

# TABLE OF AUTHORITIES

## FEDERAL CASES

*American Chicle Co. v. Topps Chewing Gum, Inc.*, 210 F.2d 680 (2d Cir. 1954) .......................24

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...........................................................................................6

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .....................................................................6

*Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F. Supp. 2d 615 (N.D. Tex. 2012) .........................................................................................................................................6

*CBS, Inc. v. American Society of Composers, Authors & Publishers*, 620 F.2d 930 (2d Cir. 1980) ......................................................................................................................................7

*Civil Aeronautics Bd. v. Delta Air Lines, Inc.*, 367 U.S. 316 (1961) ..............................................8

*Decker v. SEC*, 631 F.2d 1380 (10th Cir. 1980) .............................................................................27

*FTC v. Bronson Partners, LLC*, 654 F.3d 359 (2d Cir. 2011) ......................................................16

*Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340 (1998) .............................................10

*Foman v. Davis*, 371 U.S. 178 (1962) ...........................................................................................31

*Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238 (2000) ..........................10

*Haskett v. T.S. Dudley Land Co., Inc.*, 648 Fed. Appx. 492 (5th Cir. 2016) .................................31

*Hecht Co. v. Bowles*, 321 U.S. 321 (1944) ....................................................................................16

*Hudson v. United States*, 522 U.S. 93 (1997) ...........................................................................13, 22

*In the Matter of Eric T. Burns*, 2014 WL 1246758 (Comm'n Op. 27, 2014)................................28

*In the Matter of Frederick W. Wall*, 2005 WL 2291407 (Comm'n Op. Sept. 19, 2005)...............28

*Johnson v. SEC*, 87 F.3d 484 (D.C. Cir. 1996)..............................................................................26

*Kansas v. Nebraska*, 135 S. Ct. 1042 (2015) ............................................................................15, 16

*Kokesh v. SEC*, 137 S. Ct. 1635 (2017) ........................................................ 1-2, 7, 15, 20, 21, 22

*Krull v. SEC*, 248 F.3d 907 (9th Cir. 2001) ....................................................................................8

*Lorillard v. Pons*, 434 U.S. 575 (1978) ...................................................................................12

*Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228 (5th Cir. 2009) .....................................................6

*Lovick v. Ritemoney Ltd.*, 378 F.3d 433 (5th Cir. 2004)..............................................................6

*Manhattan Properties, Inc. v. Irving Trust Co.*, 291 U.S. 320 (1934)..........................................12

*McCarthy v. SEC*, 406 F.3d 179 (2d Cir. 2005) ........................................................................21

*Meadows v. SEC*, 119 F.3d 1219 (5th Cir. 1997) ......................................................................27

*Mitchell v. Robert De Mario Jewelry, Inc.*, 361 U.S. 288 (1960)................................................10

*NLRB v. J. H. Rutter-Rex Manufacturing Co.*, 396 U.S. 258 (1969)...........................................17

*Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962 (2014)................................................10

*Porter v. Warner Holding Co.*, 328 U.S. 395 (1946)............................................................10, 16

*Priester v. Lowndes County*, 354 F.3d 414 (5th Cir. 2004) .........................................................6

*Riordan v. SEC*, 627 F.3d 1230 (D.C. Cir. 2010) ....................................................................26

*SCA Hygiene Products Aktiebolag v. First Quality Baby Products*, 137 S. Ct. 954 (2017) .........16

*SEC v. Bartek*, 484 F. App'x 949 (5th Cir. 2012).....................................................................26

*SEC v. Benger*, 697 F. Supp. 2d 932 (N.D. Ill. 2010)................................................................29

*SEC v. Blatt*, 583 F.2d 1325 (5th Cir. 1978)............................................................................25

*SEC v. Brooks*, Case No. 07-CV-61526 (S.D. Fla. Aug. 3, 2017)..............................................2, 9

*SEC v. Cavanaugh*, 445 F.3d 105 (2d Cir. 2006) .......................................................................9

*SEC v. Collyard*, 861 F.3d 760 (8th Cir. 2017) ...................................................8, 20, 21, 26, 27

*SEC v. Commonwealth Chemical Sec., Inc.*, 574 F.2d 90 (2d Cir. 1978)...........................9, 24, 27

*SEC v. Couch*, 2014 WL 7404127 (N.D. Tex. Dec. 31, 2014) ....................................................5

*SEC v. DiBella*, 409 F. Supp. 2d 122 (D. Conn. 2006)...............................................................12

*SEC v. Gann*, 565 F.3d 932 (5th Cir. 2009)............................................................................25

*SEC v. Graham*, 823 F.3d 1357 (11th Cir. 2016) ................................................................20, 25

*SEC v. Hansen*, 1984 WL 2413 (S.D.N.Y. Apr. 6, 1984) ............................................................28

*SEC v. Jones*, 476 F. Supp. 2d 374 (S.D.N.Y. 2007)...................................................................26

*SEC v. Kelly*, 663 F. Supp. 2d 276 (S.D.N.Y. 2009) ...................................................................25

*SEC v. Kokesh*, 834 F.3d 1158 (10th Cir. 2016) ..........................................................................26

*SEC v. Koracorp Indus., Inc.*, 575 F.2d 692 (9th Cir. 1978)........................................................24

*SEC v. Koscot Interplanetary, Inc.*, 497 F.2d 473 (5th Cir. 1974) .................................................5

*SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082 (2d Cir. 1972)...........................................24, 28

*SEC v. Materia*, 745 F.2d 197 (2d Cir. 1984) ...............................................................................14

*SEC v. Nappy*, 1993 WL 535401 (N.D. Ill. Dec. 17, 1993).........................................................19

*SEC v. Palmisano*, 135 F.3d 860 (2d Cir. 1998)......................................................................12, 17

*SEC v. Payton*, 2016 WL 3023151 (S.D.N.Y. May 16, 2016) .....................................................19

*SEC v. Quan*, 817 F.3d 583 (8th Cir. 2016)..................................................................................16

*SEC v. Quinlan*, 373 Fed. Appx. 581 (6th Cir. 2010)..............................................................27, 28

*SEC v. Rind*, 991 F.2d 1486 (9th Cir. 1993) .................................................................................23

*SEC v. Straub*, 2016 WL 5793398 (S.D.N.Y. Sept. 30, 2016) .....................................................25

*SEC v. Texas Gulf Sulphur*, 446 F.2d 1301 (2d Cir. 1971)............................................................9

*SEC v. True North Finance Corp.*, 909 F. Supp. 2d 1073 (D. Minn. 2012)..................................19

*SEC v. Williams*, 884 F. Supp. 28 (D. Mass. 1995) .....................................................................27

*SEC v. Wyly*, 950 F. Supp. 2d 547 (S.D.N.Y. 2013).....................................................................24

*SEC v. U.S. Pension Trust Corp.*, 2010 WL 3894082 (S.D. Fla. Sept. 30, 2010) ........................28

*SEC v. Zandford*, 535 U.S. 813 (2002)...........................................................................................5

*Scripps-Howard Radio v. FCC*, 316 U.S. 4 (1942) ......................................................................15

*Sun River Energy, Inc. v. McMillan*, 2014 WL 4771852 (N.D. Tex. Sept. 25, 2014)....................5

*Sure-Tan, Inc. v. NLRB*, 467 U.S. 883 (1984) ..............................................................16

*Sw Realty, Ltd. v Daseke,*, 1990 WL 85921 (N.D. Tex. May 9, 1990)........................................16

*Tcherepnin v. Knight*, 389 U.S. 332 (1967)....................................................................5

*Texas Dep't of Housing & Community Affairs v. Inclusive Communities Project, Inc.*,
135 S. Ct. 2507 (2015)...............................................................................11, 12

*Tull v. United States*, 481 U.S. 412 (1987) ................................................10, 12, 17, 22

*United States v. E. I. du Pont de Nemours & Co.*, 366 U.S. 316 (1961) .......................................15

*United States v. Mann*, 26 F. Cas. 1153 (C.C.N.H. 1812) ....................................................20

*United States v. Ursery*, 518 U.S. 267 (1996) ..............................................................8

*Utility Air Regulatory Group v. EPA*, 134 S. Ct. 2427 (2014) ...............................................8

*Welch Sci. Co. v. N.L.R.B.*, 340 F.2d 199 (2d Cir. 1965) ...................................................24

*West Virginia Univ. Hospitals, Inc. v. Casey*, 499 U.S. 83 (1991)..........................................15

## FEDERAL STATUTES

15 U.S.C. § 7246(a) .........................................................................................11

15 U.S.C. § 77t(d)(2)(A).....................................................................................19

15 U.S.C. §§ 77t(f).........................................................................................11

15 U.S.C. § 78t-1(b)(2) .....................................................................................11

15 U.S.C. § 78o(a) ..........................................................................................1

15 U.S.C. § 78u-1 ..........................................................................................13

15 U.S.C. § 78u(d)(1) .......................................................................................22

15 U.S.C. 78u(d)(3) .........................................................................................22

15 U.S.C. § 78u(d)(3)(B)(1) .................................................................................19

15 U.S.C. 80b-9(d)..........................................................................................22

28 U.S.C. § 2462 ..................................................................................... 1, 5, 7, 23, 25-26

Dodd-Frank Wall Street Reform and Consumer Protection Act, 124 Stat. 1376 (2010) ..............10

Insider Trading Sanctions Act (Pub. L. No. 98-376, 98 Stat. 1264)........................................10, 22

Insider Trading and Securities Fraud Enforcement Act of 1988, 102 Stat. 4677 .........................10

Private Securities Litigation Reform Act of 1995, 109 Stat. 737 ("PSLRA").............................10

Pub. L. No. 107-204, § 305 (b), 116 Stat. 779 ....................................................................9

Remedies Act (Pub.L No. 101-429, 104 Stat. 931) ...............................................................22

Sarbanes-Oxley Act of 2002, 116 Stat. 784-785 .................................................................11

Sarbanes-Oxley Act of 2002, 116 Stat. 779........................................................................10

Securities Acts Amendments of 1975, 89 Stat. 97................................................................10

Securities Enforcement Remedies and Penny Stock Reform Act of 1990 ("Remedies Act"), 104 Stat. 931................................................................................10

Securities Litigation Uniform Standards Act of 1998, 112 Stat. 3227 .......................................10

Fed. R. Civ. P. 8 .........................................................................................................6

Fed. R. Civ. P. 15 .......................................................................................................31

## MISCELLANEOUS

*George W. Dent, Jr., Ancillary Relief in Federal Securities Law: A Study in Federal Remedies,* 67 Minn. L. Rev. 865, (1983) ............................................................9

D. DOBBS, HANDBOOK ON THE LAW OF REMEDIES (1973)............................................10

RESTATEMENT (FIRST) OF RESTITUTION (1937)........................................................16

130 Cong. Rec. 20970 (1984) ........................................................................................14

141 Cong. Rec. 16948 (1995) ........................................................................................14

H.R. Rep. No. 98-355 (1983)..........................................................................................14

H.R. Rep. 98-355 (1984)................................................................................................22

H.R. Rep. 100-910 (1988)............................................................................................22

H.R. Rep. No. 101-616, 1990 U.S.C.C.A.N. 1379 ....................................................14

S. Rep. 101-337 (1990)..............................................................................................14

S. Rep. 107-146 (2002)..............................................................................................14

S. Rep. No. 107-205, 2002 WL 1443523 (2002).................................................9, 14

Plaintiff Securities and Exchange Commission (the "Commission") files this Response in Opposition to Defendant Sparks's Rule 12(b)(6) Motion to Dismiss, filed by Defendant Steven William Sparks ("Sparks") on June 13, 2017 [Doc. 18], and respectfully shows the Court the following:[1]

## I.
## SUMMARY OF THE COMMISSION'S OPPOSITION

Sparks and Defendant Robin Glen Charlet ("Charlet") seek dismissal of the Commission's Complaint on the same grounds: (1) that the five-year statute of limitations codified in 28 U.S.C. § 2462 applies to the Commission's request for injunctive relief, in addition to civil penalties and disgorgement; (2) that the Commission's remedies accrued when the sales to investors were complete, not when the ill-gotten gains were received; and (3) the Commission's Complaint insufficiently alleges facts demonstrating that Defendants acted as "brokers" under § 15(a) of the Securities and Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78o(a)].[2]   Specifically, Defendants contend that 28 U.S.C. § 2462 bars the Commission's claims, including injunctive relief, because the Commission has not alleged any conduct inside the limitations period, contrary to express factual allegations in paragraphs 14, 23, and 24 in the Complaint.  (*See* Complaint [Doc. 1]).  On June 5, 2017, the Supreme Court decided *Kokesh v. SEC*, and held, simply, that § 2462 limits the Commission's ability to obtain disgorgement of ill-gotten gains more than five years prior to filing the Complaint. *Kokesh v.*

---

[1]   Given the timing and briefing issues raised by the intervening *Kokesh v. SEC* decision, and this Court's agreement to consolidate consideration of Charlet's and Sparks's substantially similar motions to dismiss in order to allow for complete yet efficient consideration of issues raised by *Kokesh* [Doc. 28], the Commission also hereby responds to the new arguments Charlet urged for the first time in his Reply in support of his motion to dismiss [Doc. 26].

[2]   These arguments are asserted in Charlet's Motion to Dismiss [Doc. 11], filed April 3, 2017 (hereinafter "Charlet's MTD") and Sparks's Motion to Dismiss [Doc. 18], filed June 13, 2017 (hereinafter Sparks's MTD").

*SEC*, 137 S. Ct. 1635, 1645 (2017).  As a result of *Kokesh*, the Commission concedes that it is limited to obtaining disgorgement of ill-gotten gains received within the five years preceding the date suit was filed.  But Defendants seek to extend the limited holding of *Kokesh* far beyond its reach. Charlet's Reply in Support of Motion to Dismiss [Doc. 26], filed July 21, 2017 (hereinafter "Charlet's Reply"), goes far beyond that simple holding, arguing that *Kokesh* definitively eliminated the Commission's right to recover disgorgement in its enforcement actions. The Commission believes Sparks will adopt this view in his next brief.[3]

Such argument untenably extends the language of *Kokesh* and ignores the statutes, legislative history, and settled case law.  Moreover, courts are already reject such a broad view and are holding that disgorgement is a "penalty" <u>only</u> for purposes of 25 U.S.C. § 2462.  SEC v. Brooks, Case No. 07-cv-61526, at *15 (S.D. Fla. Aug. 3, 2017) ("*Kokesh*'s holding cannot be plucked from the statutory context that gives it force…Its first paragraph could not make this sentiment plainer: disgorgement in the securities-enforcement context is a 'penalty' *within the meaning of §2462…*"); *see generally SEC v. Collyard*, 861 F.3d 750, 764 (2017) (*Kokesh* held that disgorgement is a "§2462 penalty").

Finally, the Complaint amply alleges how Sparks violated Exchange Act § 15(a).  In its "Response in Opposition to Defendant Charlet's Motion to Dismiss," filed May 24, 2017 [Doc. 16] (hereinafter "Response to Charlet's MTD"), the Commission discussed and refuted in detail Charlet's arguments, showing that Charlet satisfied many of the factors that courts have held determine "broker" status, including especially the factor of receipt of transaction-based

---

[3]   Because the Commission expects Sparks to join these arguments when he replies to this brief on Sept. 1, 2017, the Commission will refer to Charlet's Reply arguments as having already been made by both Defendants.

compensation. Because Sparks engaged in the same acts as Charlet in selling investments to unaccredited investors and duplicated Charlet's motion to dismiss, the Commission's arguments as to Charlet apply equally to Sparks, and the Commission incorporates that section of its Response to Charlet's MTD herein. (*See* Response to Charlet's MTD [Doc. 16], at 16-25).

## II.
## FACTUAL ALLEGATIONS CONCERNING SPARKS

As with Charlet, Sparks's conduct and compensation as an unregistered broker who offered and sold unregistered securities from at least September 2010 through January 2012 is amply alleged in the Complaint and easily satisfies the liberal pleading standards of Federal Rules of Civil Procedure 8 and 12(b)(6). Indeed, Sparks is individually described and his conduct carefully alleged throughout the pleading, including, for example, allegations that he:

- was one of XO Marketing's independent contractors hired to sell Couch Oil and Gas, Inc. ("COG") securities, in spite of his lack of background in the oil and gas industry; (Complaint [Doc. 1], at ¶¶ 11, 19);

- led investors to believe he was a COG employee by using COG's logo and address when communicating with investors and by using email domains such as couchoil.com and couchoilgas.com (*Id.*, at ¶¶ 11, 21);

- was a principal sales agent for XO Marketing in the offer and sale of COG securities from at least September 2010 *through* January 2012 (*Id.*, at ¶¶ 1, 11);

- was not a registered representative or associated person of any broker, dealer, or investment adviser and held no securities licenses during the relevant period (*Id.*, at ¶¶ 5, 11);

- raised, together with the other Defendants, $10 million from more than 200 investors in at least 21 states (*Id.*, at ¶¶ 1, 22);

- himself offered and sold, or participated in the offer and sale, of COG securities to 22 investors in the COG 59 Well Program and 27 investors in the COG R9 Program, including to unaccredited investors without providing them relevant financial information (*Id.*, at ¶¶ 1, 22)

- in offering and selling COG securities, was:

- o responsible for handling key steps in the purchase and sale transactions;

- o promoted the offerings online;

- o located investors and gathered information from them;

- o spoke with investors over the phone to gauge their interest in the investment and provided them information about COG securities offerings, including an overview of COG's operations, drilling techniques, drilling plans, supposed results of prior investment programs, and expected investment returns and tax advantages;

- o made recommendations to investors to invest in COG;

- o persuaded investors to invest;

- o directed investors to submit checks or make wire transfers directly to COG; and

- o remained in contact with investors after they invested, in order to provide updates and information about new investment opportunities (*Id.*, at ¶¶ 4, 18, 19, 20, 21, 22);

- was compensated based on a percentage of the individual sales and investor proceeds he brought in (*Id.*, at ¶¶ 4, 23);

- received $174,881.50 in transaction-based compensation from January 1, 2011 *through* February 28, 2012 (*Id.*, at ¶ 23)[4]; and

- as a result of this conduct, violated and, if not enjoined, will continue to violate Securities Act Section 5 and Exchange Act Section 15(a) (*Id.*, at ¶¶ 27, 31).

Because the Complaint was filed before *Kokesh* was decided, the Commission listed all of the

transaction-based compensation Sparks received for sales he made in the two COG programs.

Following *Kokesh,* the Commission's right to obtain disgorgement will ultimately be pared down

to the amount of commissions Sparks and Charlet each received on or after January 13, 2012,

within the five-year limitations period—when the parties reach the remedies stage of this case.

The amount of disgorgement that the Commission can and will seek is an issue generally taken

---

[4]  The Commission is here quoting what the Complaint actually states.  Obviously, at the remedies stage of this case, the Commission will seek the amount of unjust enrichment that Sparks received within the limitations period.

up after liability is determined, not on a motion to dismiss.  Importantly, *Kokesh* does not apply

to claims that Charlet and Sparks are liable for violating the federal securities laws.

### III.
### ARGUMENTS AND AUTHORITIES

**A.    The standard for determining Rule 12(b)(6) motions is liberal, and the Complaint is construed in the Plaintiff's favor.**

Sparks's MTD, like Charlet's, advances both a constricted interpretation of the Exchange

Act and an overly broad view of 28 U.S.C. § 2462, neither of which accords with settled law.[5]

Charlet's Reply substantially expanded *Kokesh*'s holding to reach the unsustainable conclusion

that the Supreme Court wholly eradicated the Commission's ability to obtain disgorgement of ill-

gotten gains received as a result of wrongdoing and dramatically restricted the ability to obtain

findings that a defendant is liable for violating the securities laws and obtain injunctive relief.

Such arguments conflict not only with the principle of broadly construing the Exchange Act to

effectuate its purposes, but also with settled law and the securities statutes themselves.  In

addition, Defendants ask the Court to ignore the plain language of the Complaint and apply

stricter standards to the Commission's pleading than are required under Federal Rules of Civil

Procedure 8 or 12(b)(6). At this stage, the Commission's Complaint undeniably satisfies the

requirements under these rules.

Rule 8 requires a complaint to provide "a short and plain" statement of claims that are

plausible and described with enough particularity to provide defendants with actual notice of the

---

[5]   The Exchange Act is remedial in nature and should be broadly construed to effectuate its purposes.  *SEC v. Zandford*, 535 U.S. 813, 819 (2002) (Exchange Act "should be construed not technically and restrictively, but flexibly to effectuate its remedial purposes"); *Tcherepnin v. Knight*, 389 U.S. 332, 336 (1967); *SEC v. Koscot Interplanetary, Inc.*, 497 F.2d 473, 480 (5th Cir. 1974); *SEC v. Couch*, 2014 WL 7404127, at \*7 (N.D. Tex. Dec. 31, 2014) (Fitzwater, J.) (quoting *Zandford*); *see generally Sun River Energy, Inc. v. McMillan*, 2014 WL 4771852 , at \*12 (N.D. Tex. Sept. 25, 2014) (Fitzwater, J.) (court must interpret Section 16(b) of the Exchange Act "so that the remedial purposes of the section and rule will be effectuated," quoting *Sw. Realty, Ltd. v. Daseke*, 1990 WL 85921, at \*6 (N.D. Tex. May 9, 1990) (Fitzwater, J.)).

allegations lodged against them. FED. R. CIV. P. 8.  The pleading standard for complaints is liberal, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (internal citation omitted).

Movants seeking dismissal of a complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) bear a heavy burden. Such motions are viewed with disfavor and rarely granted.  *Lormand v. U.S. Unwired, Inc.,* 565 F.3d 228, 232 (5th Cir. 2009); *Priester v. Lowndes County*, 354 F.3d 414, 418 (5th Cir. 2004).  In deciding a Rule 12(b)(6) motion, the court evaluates the sufficiency of the complaint "by accept[ing] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."  *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F. Supp. 2d 615, 618 (N.D. Tex. 2012) (Fitzwater, J.) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted)); *see also Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004) (the court must accept as true all well-pleaded factual allegations of the complaint).

A motion to dismiss must be denied so long as the complaint pleads "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 500 U.S. at 556); *see also Twombly*, 550 U.S. at 555 ("factual allegations must be enough to raise a right to relief above the speculative level"). The Commission's Complaint

provides extensive details beyond a "bare bones" recitation of the elements of its causes of action and thus satisfies Rule 12(b)(6).

**B.      Disgorgement remains a viable remedy after *Kokesh*.**

> **1.      *Kokesh* did not hold that disgorgement was no longer an available remedy.**

Notwithstanding decades of precedent and statutory authority demonstrating that disgorgement is a form of equitable relief, Defendants broadly contend that the Supreme Court's recent holding in *Kokesh*—which held that disgorgement is a penalty *"within the meaning"* of the statute of limitations in 28 U.S.C. § 2462—precludes the Court from imposing *any* disgorgement.  But *Kokesh*'s holding that the Commission's disgorgement remedy is subject to the limitations statute provides no basis for re-writing the statutory scheme governing civil penalties and remedies.  Nor does *Kokesh* provide a basis for disregarding controlling precedent recognizing the existence of the disgorgement remedy.

Judicial opinions must be read as deciding only what they purport to decide.  *CBS, Inc. v. American Soc'y of Composers, Authors & Publishers*, 620 F.2d 930, 934-35 (2d Cir. 1980).  In *Kokesh*, the Supreme Court expressly disclaimed that its decision "should be interpreted as an opinion on whether courts possess authority to order disgorgement in SEC enforcement proceedings;" the Court stated it was deciding only "whether disgorgement, as applied in SEC enforcement actions, is subject to § 2462's limitations period."  *Kokesh*, 137 S. Ct. at 1642 n.3. Given that explicit limitation, the decision cannot be understood to mean that disgorgement is a "penalty" for *all* purposes, much less that it has been eliminated.  Indeed, the Supreme Court has cautioned:

> The tendency to assume that a word which appears in two or more legal rules, and so in connection with more than one purpose, has, and should have precisely the

same scope in all of them runs all through legal discussions.  It has all the tenacity of original sin and *must constantly be guarded against.*

*Civil Aeronautics Bd. v. Delta Air Lines, Inc.*, 367 U.S. 316, 328 (1961) (citation and quotation omitted) (emphasis added); *see also United States v. Ursery*, 518 U.S. 267 (1996) (holding that civil forfeiture does not constitute punishment for purposes of the Fifth Amendment's Double Jeopardy Clause even though civil forfeiture is punishment for purposes of the Eighth Amendment's Excessive Fines Clause).  Even when a term is used twice *in the same act*—which is not the case here, since § 2462 is not found within the federal securities statutes—context may require that the term does not have the same meaning each time it is used.  *See, e.g., Utility Air Regulatory Group v. EPA*, 134 S. Ct. 2427, 2441-42 (2014) (the "presumption of consistent usage" of a statutory term "readily yields to context, and a statutory term—even one defined in the statute—may take on distinct characters from association with distinct statutory objects calling for different implementation strategies" (internal quotations and citations omitted)).

Moreover, in the § 2462 context, courts have correctly recognized—both before and after *Kokesh*—that the characterization of a remedy for purposes of a limitations statute does not control how that remedy is characterized for other purposes.  S*ee, e.g., Krull v. SEC*, 248 F.3d 907, 914 & n.9 (9th Cir. 2001) (holding that an earlier case that "only addressed whether the sanction imposed was a 'penalty'" under § 2462 did not control whether equitable relief was *substantively* "punitive rather than remedial").  More recently, the Eighth Circuit interpreted *Kokesh* as holding that, although "courts order SEC disgorgement as an exercise of their inherent equity power," disgorgement's "equitable" label does not exempt it from being a § 2462 penalty. *See SEC v. Collyard*, 861 F.3d 760, 764 (2017).  *Kokesh*'s holding that disgorgement is "a § 2462 penalty" should therefore not be understood to mean that disgorgement is a penalty for all

purposes.  *Id.; see also SEC v. Brooks*, Case No. 07-cv-61526 (S.D. Fla. Aug. 3, 2017) (*Kokesh*

holds clearly that disgorgement is penalty for § 2462 limitations purposes only).

### 2. Legislative history and statutory construction confirm that the disgorgement remedy was contemplated and approved by Congress.

Consistent with these settled principles of equity, district courts in Commission actions

have for decades used their injunctive authority under Section 21(d)(1) of the Exchange Act to

order the defendants to disgorge profits that they acquired through violations of the securities

laws.  *SEC v. Cavanaugh,* 445 F.3d 105, 116-17 (2d Cir. 2006); *SEC v. Commonwealth Chem.*

*Sec., Inc.*, 574 F. 2d 90, 102 (2d Cir. 1978); *SEC v. Texas Gulf Sulphur*, 446 F.2d 1301, 1307 (2d

Cir. 1971).  Disgorgement is also authorized by Section 21(d)(5) of the Exchange Act, which

was added as part of the Sarbanes-Oxley Act of 2002,[6] and authorizes courts to grant "any

equitable relief that may be appropriate or necessary for the benefit of investors." Pub. L. No.

107-204, § 305 (b), 116 Stat. 779.[7]  In addition, scholars have also recognized that courts have

equitable authority to impose disgorgement to prevent unjust enrichment in Commission actions.

*See, e.g.,* George W. Dent, Jr., *Ancillary Relief in Federal Securities Law: A Study in Federal*

*Remedies*, 67 MINN. L. REV. 865, 930-32 & n. 298 (1983) ("Disgorgement, restitution and

---

[6]   Defendants mistakenly stated that Congress expressly authorized the Commission to seek "any equitable relief" in 2010 (Charlet's Reply, at 2), but that language was added by the Sarbanes-Oxley Act of 2002, in 2002.  Clearly, based on the legislative history described below, *infra*, at 13-14, Congress believed that the authority to order equitable relief was already present and had been for years.

[7]   Defendants argue that the phrase "for the benefit of investors" in the statute means that the disgorged funds must be returned to investors. (Charlet's Reply, at 4). Actually, the legislative history of the statute indicates that Congress intended, if anything, to broaden the court's authority to award equitable relief:  "The Commission has also suggested that it should be allowed to obtain additional relief in enforcement cases.  For a securities law violation, currently an individual may be ordered to disgorge funds that he or she received 'as a result of the violation.' Rather than limiting disgorgement to these gains, the bill will permit courts to impose *any* equitable relief necessary or appropriate to protect, and mitigate harm to, investors." S. Rep. No. 107-205, 2002 WL 1443523, at *27 (2002).

rescission are long-established remedies of equity," citing D. Dobbs, HANDBOOK ON THE LAW OF REMEDIES 223-27 (1973)).

The Supreme Court has long construed legislative grants of equitable authority "to enjoin" statutory violations in comparable legislative schemes as encompassing the power to enter a decree compelling a defendant "to disgorge profits … acquired in violation" of the relevant statutory provisions. *Porter v. Warner Holding Co.*, 328 U.S. 395, 398-99 (1946). As the Court has explained, "[u]nless otherwise provided by statute, all the inherent equitable powers of the District Court are available for the proper and complete exercise of that jurisdiction." *Id.*; *Mitchell v. Robert De Mario Jewelry, Inc.*, 361 U.S. 288, 291 (1960) ("the comprehensiveness of [a district court's] equitable jurisdiction is not to be denied or limited in the absence of a clear and valid legislative command").[8]

Since enacting the federal securities laws in the wake of the Great Depression and giving the Commission the authority to seek injunctive relief, Congress has frequently legislated in the securities field, including times when it has substantially revised the remedies available under those laws.[9] Congress has consistently retained—without modification—the statutory text that courts have uniformly understood as authorizing disgorgement, that being § 21(d)(1) of the

---

[8]   *See also Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1978 (2014) ("disgorgement of unjust gains" is "equitable relief"); *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 352 (1998) ("[W]e have characterized as equitable … actions for disgorgement of improper profits."); *Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 250 (2000) (holding that a statute's provision allowing "appropriate equitable relief" meant that plaintiffs could maintain an action for "disgorgement of proceeds"); *Tull v. United States*, 481 U.S. 412, 424 (1987) (noting that "disgorgement of improper profits" is "traditionally considered an equitable remedy").

[9]   *See, e.g.*, Dodd-Frank Wall Street Reform and Consumer Protection Act, 124 Stat. 1376 (2010) ("Dodd-Frank"); Sarbanes-Oxley Act of 2002, 89 Stat. 97 ("Sarbanes-Oxley"); Private Securities Litigation Reform Act of 1995, 109 Stat. 737 ("PSLRA"); Securities Litigation Uniform Standards Act of 1998, 112 Stat. 3227; Securities Enforcement Remedies and Penny Stock Reform Act of 1990 ("Remedies Act"), 104 Stat. 931; Insider Trading and Securities Fraud Enforcement Act of 1988, 102 Stat. 4677; Insider Trading Sanctions Act of 1984, 98 Stat. 1264; Securities Acts Amendments of 1975, 89 Stat. 97.

Exchange Act.  Such retention is "convincing support for the conclusion that Congress accepted and ratified the unanimous holdings of the Courts of Appeals" that disgorgement as a remedy exists. *Texas Dep't of Housing & Community Affairs v. Inclusive Communities Project, Inc.*, 135 S. Ct. 2507, 2520 (2015).

Confirmation of Congress's understanding that courts have authority to order disgorgement is further evident from its enactment of statutes that logically presuppose the existence of the disgorgement remedy within the statutory language.  For example:

- In the Insider Trading and Securities Fraud Enforcement Act of 1988, 102 Stat. 4681, 15 U.S.C. § 78t-1(b)(2), Congress provided that defendants in insider trading cases have the right to offset "[t]he total amount of damages" against "the amounts, if any, that such person *may be required to disgorge*" in enforcement actions brought pursuant to the Commission's authority to seek injunctive relief (emphasis added).

- In the Private Securities Litigation Reform Act of 1995, Congress prohibited "funds *disgorged* as the result of an action brought by the Commission in Federal Court" from being "distributed as payment for attorneys' fees or expenses incurred by private parties seeking distribution of the *disgorged* funds." 15 U.S.C. §§ 77t(f), 78u(d)(4) (emphasis added).

- In the Sarbanes-Oxley Act of 2002, Congress discussed how disgorged funds would be distributed to injured investors, and directed the Commission to study prior enforcement actions that have sought "disgorgements" as well as "methods to improve the collection rates for civil penalties and disgorgements."  116 Stat. 784-785, codified at 15 U.S.C. § 7246(a), (c).

It would be senseless for Congress to have included those provisions if it had not understood as a premise that the statutory scheme already authorized courts to award disgorgement in Commission actions.  *See Inclusive Communities*, 135 S. Ct. at 2520 (where courts had previously and unanimously held that private disparate-impact claims may be brought under the Fair Housing Act, subsequent amendments that "logical[ly] … presupposed" the existence of such claims provided "[f]urther and convincing confirmation of Congress' understanding that disparate-impact liability exists under the FHA").

Consequently, Congress has endorsed the disgorgement remedy by virtue of the fact that it left undisturbed the remedy long upheld by the courts as within the general equity powers granted to the district courts. *SEC v. Palmisano*, 135 F.3d 860, 865 (2d Cir. 1998) (although disgorgement is not specifically provided for in the securities statutes, Congress has expressly endorsed that sanction); *see also SEC v. DiBella*, 409 F. Supp. 2d 122, 132 (D. Conn. 2006) (citing multiple statutory references that evidence Congress's "acknowledgment and encouragement of the SEC's long-held authority to seek disgorgement in civil actions. Congress is not only aware of the SEC's use of the disgorgement action as an enforcement tool, it seems to be quite supportive of the practice.").

It is a well-established interpretive principle that "[i]f a word or phrase has been given a uniform interpretation by inferior courts, a later version of that act perpetuating the wording is presumed to carry forward that interpretation.'" *Inclusive Communities Project, Inc.*, 135 S. Ct. at 2519-20 (2015) (quoting A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 322 (2012)); *see also Lorillard v. Pons*, 434 U.S. 575, 580 (1978) ("Congress is presumed to be aware of [the] judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change"); *Manhattan Properties, Inc. v. Irving Trust Co.,* 291 U.S. 320, 336 (1934) (where the appeals courts had reached a consensus interpretation of the Bankruptcy Act and Congress had amended the Act without changing the relevant provision, "[t]his is persuasive that the construction adopted by the [lower federal] courts has been acceptable to the legislative arm of the government").

Congress's approval of the disgorgement remedy is also apparent from the structure of the securities laws, in which Congress has consistently authorized civil penalties in provisions separate from those in which it authorized injunctive and other equitable relief. *See Tull v.*

*United States*, 481 U.S. 412, 425 (1987) (remedies "separably authorized" in different subsections are distinct); *see also Hudson v. United States*, 522 U.S. 93, 100, 103 (1997) ("only the clearest" proof will override Congress's denomination of a remedy).

For instance, when Congress first authorized courts to award civil penalties in insider-trading cases, it did not amend the provisions authorizing injunctive relief, but instead enacted an entirely new section devoted to civil penalties. *See* Exchange Act Section 21A [15 U.S.C. § 78u-1]. Several years later, when Congress authorized civil penalties in the Remedies Act for violations outside the insider-trading context, it placed that remedy in a subsection separate from the Commission's injunctive authority and further specified that seeking a civil penalty for a securities law violation is an independent basis for bringing an action in federal court.[10] Outside of the federal court context, when the Congress authorized the Commission to impose civil penalties in administrative and cease-and-desist proceedings, as it did in Dodd–Frank, it again placed the civil penalty remedy in a separate subsection from the one which authorized the Commission to order disgorgement in such administrative proceedings.[11]

In addition to the statutory structure, the legislative history further, and definitively, confirms that Congress has long understood that disgorgement is awarded pursuant to courts' equitable powers and that civil penalties were intended to *augment* the equitable remedies, including disgorgement. The House Report for the insider-trading penalty statute noted that "[t]he new penalty may be used in addition to existing remedies," including "disgorgement of ill-

---

[10]   *Compare* Exchange Act Section 21(d)(1) (authorizing the Commission to "bring an action in the proper district court of the United States … to enjoin [violations of certain securities laws and regulations], and upon a proper showing a permanent or temporary injunction or restraining order shall be granted") *with* Exchange Act Section 21(d)(3) (authorizing the Commission to "bring an action in a United States district court to seek, and the court shall have jurisdiction to impose, upon a proper showing, a civil penalty").

[11]   *Compare* Section 21B(a)(1) and (2) [15 U.S.C. § 78u–2(a)(1) and (2)] *with* Section 21B(e) [15 U.S.C. § 78u–2(e)] and Section 21C(e) [15 U.S.C. § 78u–3(e)].

gotten gains." H.R. Rep. No. 98-355 at 8, 98th Cong., 1st Sess. (1983).  Similarly, the legislative

history accompanying the 1990 Remedies Act observed that "[c]ourts in civil proceedings

currently may order disgorgement under their equitable powers," S. Rep. 101-337, at 8 n. 7

(1990) (citing *SEC v. Materia*, 745 F.2d 197 (2d Cir. 1984)), and that, because under existing

law violators were subject only to "an order of disgorgement," civil penalties were necessary to

"act as a financial disincentive to engaging in securities fraud."  H.R. Rep. No. 101-616 at 17,

1990 U.S.C.C.A.N. 1379, 1384.  *See also* S. Rep. 101-337, at 6 (noting that prior to the granting

of penalty authority in insider trading cases, "the principal remedy available to the SEC was an

injunction against further securities law violations and disgorgement of unlawful profits"); *id.*, at

10 (noting that civil penalties would be imposed "*in addition to* the disgorgement of profits")

(emphasis added); *id.*, at 13 (providing an example of a second tier penalty based on the

defendant's gross pecuniary gain which would be imposed "in addition to ordering disgorgement

of profits"); *id.*, at 16 (noting that the penalties authorized in the Act "may be imposed in

addition to orders of disgorgement directing a defendant to return the full amount of profits

derived from a violation, and other forms of equitable relief").[12]

Defendants' interpretation of *Kokesh* as eliminating disgorgement altogether would

render multiple Congressional enactments and legislative history incoherent and meaningless, in

---

[12]   For additional legislative history referring to disgorgement in Commission actions, *see, e.g.*, S. Rep. No. 107-205, 2002 WL 1443523,  at *27 (2002) ("For a securities law violation, currently an individual may be ordered to disgorge funds that he or she received 'as a result of the violation.'"); S. Rep. 107-146, at *24 (2002) (stating that "disgorgement funds" from Commission enforcement actions are typically "deposited in the Treasury only if the administrative costs of distributing the funds to the victims are prohibitive," while noting that "a violator could escape paying disgorgement funds under bankruptcy proceedings"); 141 Cong. Rec. 16948 (1995) (Sen. D'Amato) ("The relief obtained from Commission disgorgement actions is no substitute for private damage actions."); 130 Cong. Rec. 20970 (1984) (Rep. Wirth) (stating that, under then-governing law, "the only remedy available to the SEC is an injunction against further violations of the securities laws and disgorgement of illicit profits"); H.R. Rep. 98-355, at 7 (1983) ("Once the equity jurisdiction of a court has been invoked on a showing of a securities violation, the court possesses the necessary power to fashion an appropriate remedy. Thus, the Commission may request that the court order certain equitable relief, such as the disgorgement (giving up) of illegal profits…").

derogation of the rule that a court's role is "to make sense rather than nonsense out of the *corpus juris.*"  *West Virginia Univ. Hospitals, Inc. v. Casey*, 499 U.S. 83, 101 (1991).

**3.** ***Kokesh*'s rationale that disgorgement is a penalty for limitations purposes only conforms to case law that disgorgement is available as remedy.**

In any event, *Kokesh*'s rationale that disgorgement is a penalty for limitations purposes only is consistent with prior case law holding that disgorgement is a valid equitable remedy available in Commission actions.  It is true, as Defendants state, that courts of equity do not have authority to impose punitive sanctions.  (Charlet's Reply, at 2).  But the features of disgorgement that the Court identified in *Kokesh* in holding that disgorgement was a penalty *for purposes of § 2462* (quoted in Charlet's Reply, at 2) have never been understood to render that remedy, or others, as punitive for purposes of an equity court's power to award relief.  To the contrary, the "hallmarks of a penalty" noted in *Kokesh* are entirely consistent with longstanding case law on equitable remedies. *See Kokesh*, 137 S. Ct. at 1644 (describing such penalty "hallmarks" as a sanction (1) imposed as a consequence of violating a public law, (2) which is intended to deter, and (3) is not necessarily intended to compensate).

*First*, it has been long established that equitable remedies such as disgorgement may be appropriately triggered by violations of public laws. *See, e.g.*, *Kansas v. Nebraska*, 135 S. Ct. 1042, 1053 (2015) ("[T]he Court may exercise its full [equitable] authority to remedy violations of and promote compliance with" Congressionally-approved compact between states "so as to give complete effect to public law"); *United States v. E. I. du Pont de Nemours & Co.*, 366 U.S. 316, 326 (1961) ("equitable remedy" of divestiture in antitrust cases is "designed to protect the public interest").  This is part and parcel of the general rule that equitable remedies are available not just to protect private rights, but to vindicate the public interest.  *See Scripps-Howard Radio v. FCC*, 316 U.S. 4, 15 (1942) ("Courts of equity may, and frequently do, go much farther both

to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved.").

*Second*, it is also well settled that equitable remedies can have a deterrent purpose. *See, e.g.*, *Kansas*, 135 S. Ct. at 1057 ("[A] disgorgement award appropriately reminds Nebraska of its legal obligations, deters future violations, and promotes the Compact's successful administration."); *Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 904 n.13 (1984) ("At the same time, we fully recognize that the [equitable] reinstatement and backpay awards afford both more certain deterrence against unfair labor practices and more meaningful relief for the illegally discharged employees."); *Porter*, 328 U.S. at 400 (holding that disgorgement is a permissible remedy in part because "[f]uture compliance may be more definitely assured if one is compelled to restore one's illegal gains"); *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944) ("The historic injunctive process was designed to deter, not to punish").

*Third*, it is entirely consistent with the "equitable" nature of a remedy for it to be non-compensatory. *See SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods.*, 137 S. Ct. 954, 964 (2017) ("The equitable remedy of an accounting, however, was not the same as damages. The remedy of damages seeks to compensate … whereas the remedy of an accounting … sought disgorgement of ill-gotten profits."). As the Restatement explains, even where a defendant has been wrongfully enriched but a plaintiff has not suffered a corresponding loss, the defendant may nonetheless "be under a duty to give to the plaintiff the amount by which he has been enriched." RESTATEMENT (FIRST) OF RESTITUTION § 1 cmt. e (1937).[13]

---

[13]   Defendant's claim (Charlet's Reply, at 3) that disgorgement must be "directed against some specific thing" is without merit.  "[T]he Federal Reporter is replete with instances in which judges … deeply family with equity practice have permitted the SEC to obtain disgorgement without any mention of tracing."  *FTC v. Bronson Partners, LLC*, 654 F.3d 359, 374 (2d Cir. 2011).  In *SEC v. Quan*, 817 F. 3d 583, 594 (8th Cir. 2016), the court stated that "the SEC seeking disgorgement is not analogous to a private plaintiff suing for money it is owed under a contract," such as the plaintiffs in the ERISA action that Defendants cited. (Charlet's Reply, at 3).  There is "no authority

Finally, disgorgement is traditionally characterized as non-punitive because its primary purpose is to prevent an unjust enrichment rather than to inflict punishment.  *See, e.g.*, *Palmisano*, 135 F.3d at 866 ("Disgorgement … is designed in part to ensure that the defendant not profit from his illegal acts, a goal that is nonpunitive.").  But that does not preclude disgorgement and similar equitable remedies from being partly punitive in the sense that the Court has understood such remedies.  *See Tull*, 481 U.S. at 424 (describing disgorgement as "a more limited form of penalty than a civil fine"); *see also NLRB v. J. H. Rutter-Rex Mfg. Co.*, 396 U.S. 258, 265 (1969) (describing the equitable remedy of "back pay" as, in part, "punishment").

## C.     The accrual date for limitations on disgorgement differs from the accrual date for a civil penalty.

A motion to dismiss is not the proper vehicle for considering when the Commission's disgorgement claim accrues. Nonetheless, Defendants allege that the accrual of the disgorgement remedy is no different than the accrual of the civil penalty—that is, when all components of the underlying violation have occurred. (Charlet's Reply, at 4-5).  Defendants erroneously assume that because *Kokesh* ruled that disgorgement is a penalty simply for purposes of § 2462, that disgorgement must be treated identically to a civil penalty under Section 21(d)(3) for all purposes, including accrual. But *Kokesh* did not decide that.

As discussed above, simply because a remedy is labeled a "penalty" for one purpose does not make it a penalty for every purpose.  (*See supra*, at 7-9).  As Defendants noted, a "claim" accrues only when all elements have been satisfied.  (Charlet's Reply, at 5).  The statutory civil penalty accrues when all of the elements of the underlying violation for which the penalty is to be assessed have occurred, which would be when the violation is complete.  In contrast, the

---

suggesting a lawsuit by an organ of the government acting in the public interest to enforce specific statutory and regulatory provisions and prevent violators from keeping their ill-gotten gain resembles a traditional suit at law."

Commission's right to disgorgement can accrue only at the point in time when Defendants receive the money that constitutes the unjust enrichment sought to be disgorged. Until that time, the Commission's right to obtain disgorgement is inchoate.[14]

Courts and Congress have understood disgorgement to be imposed under courts' equitable authority under Sections 21(d)(1) and (d)(5) of the Exchange Act, not under Section 21(d)(3), which was not enacted until 1990. And disgorgement, unlike a civil penalty, is measured by a defendant's unjust enrichment and is limited by equitable principles that do not similarly limit the measure of civil penalties. Consequently, Defendants' contention that the Commission's disgorgement "claim"—actually, the remedy—accrues at the time of the *conduct* constituting the violation is incorrect. Their contention misreads Section 21(d)(3) and must be rejected because it equates disgorgement with civil penalties, which contradicts Congress's purpose in enacting that provision in the first place—which was to authorize courts to award civil penalties separately from and *in addition to* disgorgement. *Supra*, at 13-14. The remedy of disgorgement accrues when the funds constituting the unjust enrichment have been received by the defendant.

Determining accrual of the disgorgement remedy will be relevant at the remedies stage of this case. But for now, when the Complaint amply alleges more than sufficient facts occurring within the limitations period, determining the actual accrual date for remedies purposes now is premature and unnecessary. It puts the proverbial cart before the horse. As described in the Commission's Response to Charlet's MTD (at 12-13), and herein, the Commission has plainly

---

[14]   Defendants cite three inapposite cases holding that a claim accrues when the violation occurs, even if the full extent of the damages are not yet ascertainable. (Charlet's Reply, at 5 n.6). None of those cases are Commission enforcement actions, or even enforcement actions by any "organ of government" (*see supra*, n. 13), and none of them even mention the word "disgorgement," as all are private suits for legal damages.

alleged conduct violating the securities laws against Sparks, as well as Charlet, within the five-year limitations period.  The Complaint states that (1) Sparks (and Charlet) sold COG investments "through" January 2012, and at least "until" January 28, 2012; (2) Sparks (and Charlet) received sales commissions through February 28, 2012; (3) he was neither a registered representative of, nor associated with, any broker, dealer, or investment adviser during that time; and (4) the COG securities he offered and sold were not registered during that time. (*See* Complaint at ¶¶ 1, 11, 14, 23-24). Hence, even if the accrual dates were the same for disgorgement as for a civil penalty, which they are not, the Complaint clearly alleges that Sparks violated the securities laws and received compensation for such conduct *after* January 13, 2012—the start of the five-year period preceding the Complaint. Taking these allegations as stated, and certainly when reading them in the light most favorable to the Commission, it is beyond dispute that the Complaint states actionable claims under Securities Act Section 5 and Exchange Act Section 15(a), and that the conduct underlying those claims occurred within the five years preceding the filing of the Complaint.

The determination of the amount of disgorgement, including when it accrues, should be made *after* a determination of Defendants' liability and upon a more fully developed record. 15 U.S.C. § 77t(d)(2)(A) (amount of penalty is determined by court); 15 U.S.C. § 78u(d)(3)(B)(1) (same); *SEC v. Payton*, 2016 WL 3023151, at *3 (S.D.N.Y. May 16, 2016) (in any Commission enforcement action, determination of remedies is for the court while the jury determines liability); *SEC v. True North Finance Corp.*, 909 F. Supp. 2d 1073, 1124 (D. Minn. 2012) (parties agree that court rather than jury decides remedies); *SEC v. Nappy*, 1993 WL 535401, at *6 n. 1 (N.D. Ill. Dec. 17, 1993) (disgorgement and injunctive relief are equitable remedies that the court, not the jury, decides).

**D.**    *Kokesh* **also did not hold that the Commission's right to seek injunctive relief is subject to the statute of limitations.**

**1.**    **Defendants misread** *Kokesh.*

Defendants' argument that § 2462 applies the five-year statute of limitations to bar injunctive relief has no merit.  (Charlet's Reply, at 6). As stated above, *Kokesh* addressed one narrow issue: "whether § 2462 applies to claims for *disgorgement* imposed as a sanction for violating a federal securities law."  *Kokesh*, 137 S. Ct. at 1639; *see also SEC v. Collyard*, 861 F.3d 760 at 764.  The Court held that for purposes of § 2462, a "'penalty' is a 'punishment, whether corporal or pecuniary, imposed and enforced by the State, for a crime or offense against its laws.'"  *Kokesh*, 137 S. Ct. at 1642.  Disgorgement constitutes a penalty under *that* test, the Court reasoned, because, for limitations purposes, disgorgement orders "go beyond compensation, are intended to punish, and label defendants wrongdoers as a consequence of violating public laws."  *Id.*, at 1645.

The injunctions that the Commission seeks are not penalties.  An "obey-the-law" injunction, which is what the Commission seeks in this case, "does not impose additional duties on a defendant," much less inflict the sort of "pecuniary" punishment at issue with the *Kokesh* disgorgement.  *See also United States v. Mann*, 26 F. Cas. 1153, 1154 (C.C.N.H. 1812) (Story, J.) (the term "penalty" naturally refers to a monetary penalty).  If the Court were ultimately to conclude that injunctions are warranted here, it would issue them to "protect the public prospectively," not to punish the Defendants for past conduct.  *Collyard*, 861 F.3d at 764.  The mere fact that an injunction is imposed in part as a consequence of past misconduct does not make it a penalty.  *See SEC v. Graham*, 823 F.3d 1357, 1362 (11th Cir. 2016) (explaining that in *Gabelli v. SEC*, 568 U.S. 442 (2013), "the Court did not hold that all remedies the SEC may seek in an enforcement action are penalties").

Defendants claim that an injunction ordering them to obey the law in the future would have no remedial effect on the parties harmed and would therefore be nothing but a "penalty" to them. (Charlet's Reply, at 6-7). That statement misinterprets *Kokesh*, which discussed only disgorgement and reasoned that when disgorgement "cannot fairly be said *solely* to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, [it] is punishment." 137 S. Ct. at 1645. Having held that disgorgement was "imposed for punitive purposes," the Court ruled that disgorgement constituted punishment under § 2462, even though it also serves remedial goals. *Id.*, at 1643-45.

That reasoning, however, does not translate to the securities laws injunctions. Injunctions, unlike disgorgement, *can* "fairly be said *solely* to serve a remedial purpose." *See Kokesh*, 137 S. Ct. at 1645. Indeed, injunctions can be issued *only* to protect, not to punish (*see infra*, at 24-26). The Court ruled that disgorgement can only be explained by its deterrent rationale, but in contrast "general deterrence is not, by itself, sufficient justification" for injunctive relief. *McCarthy v. SEC*, 406 F.3d 179, 189 (2d Cir. 2005). Of course, an injunction restrains the defendant and in that sense deters further misconduct *by that defendant*. *See Collyard*, 861 F.3d at 765 ("this injunction—nonpecuniary and requiring only obedience with the law—likely does little to deter people other than" the defendant). But that is precisely what makes injunctions remedial. An injunction that requires only obedience with the law is based on evidence of a likelihood to violate that law and seeks to protect the public prospectively from the particular defendant's harmful conduct is not a penalty under Section 2462. *Collyard*, 861 F.3d at 764.

## 2. Statutory construction demonstrates that injunctions are not penalties for § 2462 purposes.

Defendants also overreach in their claim that injunctions are penalties and thereby subject to 28 U.S.C. § 2462. (Charlet MTD, at 14; Sparks MTD, at 11-12; Charlet Reply, at 6). This

argument—that an injunction under the federal securities laws is a penalty as a matter of law—is contrary to the text and structure of the securities laws, where Congress repeatedly distinguished between "injunctions" and "civil penalties," using those labels in different statutory subsections that were enacted at different times.  Exchange Act Section 21(d)(3), is titled "Money *penalties* in civil actions" and expressly refers to an action to impose a "civil *penalty*."  15 U.S.C. 78u(d)(3) (emphasis added); *see also* Advisers Act Section 209(e) (titled "money penalties in civil actions" and authorizing an action to impose a "civil penalty").  In contrast, the injunctions the Commission seeks here are authorized by Exchange Act Section 21(d)(1), which is titled "*Injunction* proceedings" and expressly refers to an action for a "permanent or temporary *injunction*."  15 U.S.C. § 78u(d)(1) (emphasis added); *see also* Advisers Act Section 209(d) [15 U.S.C. 80b-9(d)] (titled "Action for Injunction" and authorizing an action "to enjoin" violations). *Cf. Hudson v. United States*, 522 U.S. 93, 100, 103 (1997) ("only the clearest" proof will override Congress's denomination of a remedy); *Tull,* 481 U.S. at 425 (remedies "separably authorized" in different "subsection[s]" are distinct).

The Commission has had the authority to seek injunctions against securities law violations since the 1930s under the Securities Act of 1933 and Exchange Act, but had no general authority to obtain civil penalties until Congress in 1984 enacted the Insider Trading Sanctions Act (Pub.L. No. 98–376, 98 Stat. 1264), and in 1990 enacted the Remedies Act (Pub.L No. 101-429, 104 Stat. 931).  When it first gave the Commission authority to seek these civil penalties, Congress noted that the principal remedy available to the Commission before then was "an injunction against further violations of the securities laws," which serves "only a remedial function and does not penalize a defendant for the illegal conduct."  H.R. Rep. 98-355 at *7-*8 (1984); *accord* H.R. Rep. 100-910 at *11 (1988).  This history confirms that Congress has

always understood that an injunction issued in a Commission action is remedial and cannot be used to punish.

Defendants' claim that injunctions are penalties is also contrary to the manifest language of § 2462, which by its plain terms does not refer to injunctions.  Section 2462 states:

> Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued if, within the same period, the offender or the property is found within the United States in order that proper service may be made thereon.

If Congress had intended § 2462 to apply to requests for injunctions, it would have included that additional term in § 2462.

*Kokesh*'s holding that disgorgement is subject to § 2462 even though the penalty statute does not mention that remedy does not require a different analysis for injunctions.  In holding that § 2462 applies to disgorgement, the Court in *Kokesh* emphasized that disgorgement was not explicitly authorized in the federal securities laws and was developed by courts.  *See* 137 S. Ct. at 1640.  In contrast, Congress has incontrovertibly and expressly authorized the Commission to pursue injunctive actions since the Commission's establishment.  Congress's decision not to "impos[e] an explicit time limit on Commission enforcement actions" (while subjecting private litigants to multiple statutes of limitations) therefore "must be interpreted as deliberate" with respect to injunctive actions.  *SEC v. Rind*, 991 F.2d 1486, 1491 (9th Cir. 1993).

**3.      Courts have consistently held—both before and after *Kokesh*—that injunctions are not penalties and not subject to limitations.**

Precedent also confirms that an injunction is not a penalty under § 2462.  At equity, an injunction *cannot* be used to punish.  A court has no authority to impose a "punitive injunction" not because of anything in § 2462, but because equity does not allow it.

Courts have long recognized that "an injunction is protection for the future and not punishment for the past." *American Chicle Co. v. Topps Chewing Gum, Inc.*, 210 F.2d 680, 683 (2d Cir. 1954).  In Commission actions in particular, injunctions against securities violations are imposed to protect the public from *future* violations, "not to punish" the violators.  *SEC v. Koracorp Indus., Inc.*, 575 F.2d 692, 697 (9th Cir. 1978); *see also SEC v. Wyly*, 950 F. Supp. 2d 547, 558 (S.D.N.Y. 2013) ("[An] injunction cannot be [used] to penalize—it must be [imposed] to protect against future harm."); *see also Welch Sci. Co. v. N.L.R.B.*, 340 F.2d 199, 202-03 (2d Cir. 1965) (NLRB's order that "the company should cease and desist from interrogating the New York employees concerning their [union] membership," a violation of the National Labor Relations Act, was "purely remedial").  For that reason, the "critical question for a district court in deciding whether to issue a permanent injunction," is not merely whether a violation occurred, but whether in view of past misconduct "there is a reasonable likelihood that the wrong will be repeated." *SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082, 1100 (2d Cir. 1972); *see also SEC v. Commonwealth Chem. Secs., Inc.*, 574 F.2d 90 at 100 (Commission must go beyond the mere facts of past violations and demonstrate a realistic likelihood of recurrence to obtain injunction relief).

Because an injunction cannot be used to penalize, "the statute of limitations question [under § 2462] merges with the substantive requirements for obtaining an injunction under the securities laws—if the substantive claim is viable, then it is, by definition, not subject to a statute of limitations." *Wyly*, 950 F. Supp. 2d at 558.  If the Court ultimately finds that there is a reasonable likelihood that the defendants in this case will repeat their wrongs and that injunctions are therefore necessary to protect the investing public, and if balancing the five factors for imposing an injunction weighs in favor of the prospective relief, then the injunction should issue,

notwithstanding the passage of time after the events giving rise to this suit. *See SEC v. Gann*, 565 F.3d 932, 940 (5th Cir. 2009) (courts consider (1) the egregiousness of the defendant's conduct; (2) the degree of *scienter*; (3) the isolated or recurrent nature of the violation; (4) the sincerity of the defendant's recognition of his transgression; and (5) the likelihood of the defendant's job providing opportunities for future violations); *SEC v. Blatt*, 583 F.2d 1325, 1334 (5th Cir. 1978) (same, except splitting the fourth factor into two parts as the sincerity of the defendant's assurances against future violations and the defendant's recognition of the wrongful nature of his conduct). If the Court determines—for whatever reason—that imposing injunctions would penalize the Defendants, it will have no basis for issuing any such injunctions. The decision of whether to issue an injunction is driven by a fact-intensive analysis that the Court cannot conduct at the motion to dismiss stage.

Since injunctions cannot be used to punish, it is unsurprising that courts have routinely held that § 2462 does not apply to injunctive relief. *See SEC v. Straub*, 2016 WL 5793398, at *14 (S.D.N.Y. Sept. 30, 2016); *SEC v. Kelly*, 663 F. Supp. 2d 276, 286-87 (S.D.N.Y. 2009). Courts before and after *Kokesh* have consistently ruled that disgorgement is qualitatively different from injunctions for § 2462 purposes. The Eleventh Circuit, in *SEC v. Graham*, 823 F.3d 1357 at 1361, concluded that disgorgement was subject to § 2462 but explained that injunctions are not penalties because they "look forward in time" and "only prevent the defendants from violating securities law in the future." Similarly, despite questioning in a footnote whether disgorgement is a forfeiture under § 2462, the D.C. Circuit had no trouble holding that because a cease-and-desist order "simply requires [petitioners] not to violate the relevant securities laws in the future," it is "purely remedial and preventative," and therefore "is not a 'fine, penalty, or forfeiture' covered by the five-year statute of limitations in 28 U.S.C. §

2462." *Riordan v. SEC*, 627 F.3d 1230, 1234 & n.1 (D.C. Cir. 2010).  And even though the

Tenth Circuit in *Kokesh* was not swayed by *Riordan*'s and *Graham*'s concerns about

disgorgement, it agreed with both courts that because the purpose of an injunction "is not to

penalize," but "to protect the public," a request for an injunction is not subject to § 2462.  *SEC v.

Kokesh,* 834 F.3d 1158, 1162-1163 (10th Cir. 2016), *rev'd on other grounds*, 137 S. Ct. 1635

(2017).

Following *Kokesh*, the Eighth Circuit reached the same result in *SEC v. Collyard*, 861

F.3d 760 at 764.  At issue in *Collyard* was a district court injunction that "(1) require[d] only

obedience with the law, (2) [was] based on evidence of a likelihood to violate that law, and (3)

[sought] to protect the public prospectively from Crawford's harmful conduct rather than punish

Crawford."  *Id.*  In light of these findings demonstrating that the injunction was "imposed to

protect the public prospectively," the Eighth Circuit found it unnecessary to determine whether

an injunction could ever be punitive and held that, notwithstanding *Kokesh*, the injunction on

review was remedial and not subject to § 2462.  *Id.*

### 4.  Cases holding injunctions are penalties do not so hold as a matter of law.

Defendants rely heavily on the unpublished opinion in *SEC v. Bartek*, 484 F. App'x 949,

957 (5th Cir. 2012), for their argument that injunctions are a penalty and subject to § 2462.

(Charlet's MTD, at 14; Sparks's MTD, at 11-12; Charlet's Reply, at 6).  *Bartek* affirmed a

summary judgment (not a Rule 12(b)(6) dismissal) denying an injunction on § 2462 grounds,

where there was only a "minimal likelihood of similar conduct in the future".  That case, and two

others holding similarly,[15] have repeatedly been understood by subsequent courts as holding that

---

[15]  *See SEC v. Jones*, 476 F. Supp. 2d 374, 385 (S.D.N.Y. 2007) (granting summary judgment for defendants where "the Commission [did] not offer[] facts that suggest the requested injunction is aimed at protecting the public from future harm"); *Johnson v. SEC*, 87 F.3d 484, 488-90 (D.C. Cir. 1996) (vacating on § 2462 grounds a Commission

a particular injunction, after a fact-intensive analysis, can be a penalty in its application if it is insufficiently supported, and not as a holding that an injunction is a penalty *as a matter of law*, as Defendants claim. *See Collyard*, 2017 WL 2803184, at \*3 (citing *Bartek* as example of case "conduct[ing] [a] fact-intensive analys[is] to determine whether a particular injunction" is punitive); *Meadows v. SEC*, 119 F.3d 1219, 1228 & n.20 (5th Cir. 1997) (affirming a temporary bar and distinguishing *Johnson* on the ground that the sanction was "based upon findings demonstrating petitioner's unfitness to serve the investing public" and reflected the "degree of risk petitioner pose[d] to the public"); *SEC v. Quinlan*, 373 Fed. Appx. 581, 588 (6th Cir. 2010) (rejecting applicability of Section 2462 to injunction where "the district court undertook the fact-intensive inquiry articulated in *Johnson* and applied in *Jones*").

Nor is there any merit to Defendants' argument that no remedial effect would flow from an obey-the-law injunction because the Commission successfully resolved its fraud actions against Couch and COG, with the final judgment entered against them on May 9, 2016. (Charlet's Reply, at 6-7).   Consequently, they argue, the injunction would only punish them for past conduct.   But courts have long recognized that, while collateral consequences of an injunction can sometimes be "very grave," such consequences do not transform an injunction into a penalty.  *Commonwealth Chem. Secs., Inc.*, 574 F.2d at 99-100;  *Decker v. SEC*, 631 F.2d 1380, 1384 (10th Cir. 1980); *SEC v. Williams*, 884 F. Supp. 28, 30 (D. Mass. 1995).  In any event, this is not the appropriate time to determine whether an injunction should issue.  The Court will have an opportunity to consider collateral consequences of an injunction at the relief

---

order that articulated the basis for Johnson's suspension in "only one conclusory paragraph" that failed to "focus[] on Johnson's current competence or the degree of risk she had posed to the public" and instead "justifie[d] the sanction *solely* in view of Johnson's past misconduct").

stage of this case, where it can balance any purported "adverse effect of an injunction" to the

Defendants against the public's need for the "protection of an injunction." *SEC v. Manor*

*Nursing Ctrs., Inc.*, 458 F.2d 1082 at 1102; *Quinlan*, 373 Fed. Appx. at 588 (district court acted

within its discretion in finding that an injunction was necessary to protect investors

notwithstanding "the severe collateral consequences of the equitable relief").

**E.    The Complaint sufficiently alleges that Sparks acted as an unregistered broker,
thereby violating Exchange Act Section 15(a).**

Sparks also moves the Court to dismiss the Complaint on the grounds that it insufficiently

alleges that he met the definition of a "broker" under Section 15(a) of the Exchange Act.  Like

Charlet, Sparks does not dispute that he was never registered as a broker during the relevant

period, but contends only that the Commission failed to plead sufficient facts showing he *acted*

as an unregistered broker.  In fact, his motion to dismiss on this point is identical to Charlet's.

As discussed in more detail in the Commission's Response to Charlet's MTD,[16] the

definition of a "broker" is to be construed broadly, and broker exemptions from registration are

to be construed narrowly, to maximize investor protection and the integrity of the brokerage

community. *In the Matter of Frederick W. Wall*, 2005 WL 2291407, at *3 n. 9 (Sept. 19, 2005)

(Comm'n Op.); *see also In the Matter of Eric T. Burns*, 2014 WL 1246758, at *3 n. 8 (Mar. 27,

2014) (Initial Dec.) (definition of "person associated with a broker or dealer" should be

construed broadly).  Courts determine who meets the definition of a "broker" based on a number

of factors, such as those found in *SEC v. Hansen*, 1984 WL 2413, at *10 (S.D.N.Y. Apr. 6, 1984)

(six factors), and *SEC v. U.S. Pension Trust Corp.*, 2010 WL 3894082, at *21 (S.D. Fla. Sept.

---

[16]   Due to the consolidation of the consideration of both motions to dismiss, the Commission adopts and incorporates
herein its argument on the "broker" issue contained in its Response to Charlet's MTD [Doc. 16], at pages 16-25, and
will not duplicate that entire argument in this Response.

30, 2010) (11 factors). The factors are not exclusive, and a defendant does not have to satisfy all

factors to be considered a broker.  *See, e.g., SEC v. Benger*, 697 F. Supp. 2d 932, 945 (N.D. Ill.

2010).

The Complaint sufficiently alleges that Sparks acted as a broker under Section 15(a).

Those allegations, which also applied to Charlet, include:

- Couch Oil & Gas ("COG") hired Sparks to promote its offerings. (Complaint, at ¶18).
  While Sparks may have technically been an independent contractor (Complaint, at ¶¶
  11, 18), he represented himself to investors as a COG employee. (Complaint, at ¶ 21).

- Sparks received $174,881.50 in transaction-based compensation for closing sales,
  with such compensation directly tied to the investors' purchases of the COG
  investments (*Id.*, at ¶¶ 22, 23).

- After COG ceased selling its interests, Sparks became involved in selling another oil
  and gas investment in Oklahoma. The details of his actions with that investment are
  not included in the Commission's Complaint, as they are not relevant to his failure to
  register as a broker in connection with the COG sales.  However, a reasonable
  inference may be drawn that he has sold other securities, based on the allegation that
  Sparks is a defendant in an Oklahoma state court lawsuit, which involves a separate
  alleged fraud scheme of selling the unregistered securities of a different oil and gas
  producer.  (*Id.*, at ¶ 11).

- Sparks made "sales calls" to the individuals who expressed their interest.  (*Id.*, at ¶
  19).  Sparks reached out to the people who emailed the COG website expressing
  possible interest in COG offerings. (*Id.*).  During those phone calls, Sparks gathered
  information from those prospective investors and gauged their interest. (*Id.*).

- Sparks disseminated COG's investment materials (including the glossy brochures).
  (*Id.*, at ¶ 20).  He also provided information to the prospective investors about COG's
  current offering, an overview of COG's operations, COG's drilling techniques and
  drilling plans, the performance of COG's prior drilling programs, expected returns
  and economic projections for the current program, and expected tax advantages. (*Id.*,
  at ¶ 19).

- Sparks made valuations as to the merits of COG's investments by recommending that
  the prospective investors purchase them and by persuading the prospective investors
  to purchase them. (*Id.*).

- As many investors never spoke to Charles Couch about investing, and only spoke with Sparks, Sparks actually "closed sales," meaning that he was the salesman responsible for persuading those investors to purchase a COG investment.  (*Id.*).

- Sparks sold or participated in selling 22 units of COG's 59 Well Program and 27 of COG's Radial 9 Well Program, clearly indicating a "regularity of participation" in the selling activity. (*Id.,* at ¶ 22).

These factual allegations in the Complaint are far more than a merely "formulaic" or "bare bones" recitation of elements asserting how Sparks acted as a broker.  *See Haskett v. T.S. Dudley Land Co., Inc.*, 648 Fed. Appx. 492, 496 (5th Cir. 2016) (present complaint contained more detail than another "bare bones" complaint court had recently accepted in a different case).  These allegations expressly state a plausible claim under Exchange Act Section 15(a) that Sparks offered and sold securities to investors without being registered as a broker.

In its Response to Charlet's MTD, the Commission discussed and refuted in detail: (1) Charlet's disproportionate emphasis on the clause of "effecting transactions for the account of others;"  (2) his claim that a broker must be an "agent" of the purchaser; and (3) that Charlet merely acted as a "finder," not a "broker."  As Sparks has duplicated Charlet's arguments in his motion, the Commission's same arguments as to Charlet apply equally to Sparks's same arguments, and, as previously stated, are incorporated herein. (*Supra*, at n. 16).

Charlet's Reply to the Commission's Response was a "fair" reply, in that it reacted to the Commission's arguments and did not add any new (or even significant) arguments on the "broker" argument.  Charlet's Reply distinguished one case cited by the Commission and cherry-picked two "broker" factors out of the many non-exclusive factors discussed in the case law to argue that the Commission's failure to allege those specific factors means that the Commission's allegations are insufficient—thereby ignoring the well-established principle that the "broker" factors are not exclusive and ignoring the other factors that are on point.  (Charlet's Reply, at 9-

10).  But, as Charlet did not rely on the recently decided Supreme Court opinion, or any other new materials, the Commission does not need to further respond on this argument beyond what it briefed in its Response to Charlet's MTD.

## IV.
## REQUEST FOR LEAVE TO AMEND COMPLAINT

As with the Charlet MTD, should the Court conclude that the Commission insufficiently pleaded any facts or claims for relief in connection with Sparks's MTD, the Commission expressly and respectfully requests leave to amend the Complaint.  Rule 15 of the Federal Rules of Civil Procedure gives trial courts discretion to permit a party to amend its complaint before trial, and directs courts to "freely give leave when justice so requires."  FED. R. CIV. P. 15. Courts liberally grant leave to amend pleadings when Rule 12(b)(6) dismissal is at stake.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (Rule 15(a), declaring that leave to amend "shall be freely given when justice so requires," is a mandate "to be heeded").  Consequently, the Commission contends that it is entitled, and should be given leave, to amend its Complaint if the Court finds favor with any part of Defendant's Motion.

## V.
## CONCLUSION

For all of the foregoing reasons, Plaintiff Securities and Exchange Commission respectfully requests that the Court deny Defendant's Rule 12(b)(6) Motion to Dismiss and grant Plaintiff such other relief to which it may be justly entitled.

Dated:  August 4, 2017.                    Respectfully submitted,

                                           */s/ Janie L. Frank*
                                           Janie L. Frank
                                           Texas Bar No. 07363050
                                           SECURITIES AND EXCHANGE COMMISSION
                                           Fort Worth Regional Office
                                           Burnett Plaza, Suite 1900
                                           801 Cherry Street, Unit #18
                                           Fort Worth, TX 76102-6882
                                           (817) 978-6478
                                           (817) 978-4927 (facsimile)
                                           *frankj@sec.gov*

                                           COUNSEL FOR PLAINTIFF UNITED STATES
                                           SECURITIES AND EXCHANGE COMMISSION


## CERTIFICATE OF SERVICE

On August 4, 2017, I electronically submitted the foregoing document with the Clerk of the Court of the U.S. District Court, Northern District of Texas, Dallas Division, using the CM/ECF system.  The electronic case filing system will send a "Notice of Electronic Filing" to all counsel of record who has consented in writing to accept service of this document by electronic means.

                                           *s/ Janie L. Frank*
                                           Janie L. Frank